**JAMESTOWN FARMERS ELEVATOR, INC., formerly Mutschler Grain Company, Appellant,**

v.

**GENERAL MILLS, INC., Appellee.**

**No. 76–1434.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 12, 1977.

Decided April 4, 1977.

Rehearing Denied April 29, 1977.

John F. Hacking, Minneapolis, Minn., for appellant; Gordon J. Berg and David Gronbeck, Minneapolis, Minn., on brief.

Robert H. Swenson, Moorhead, Minn., for appellee; James D. Cahill, of Cahill, Gunhus, Streed, Grinnell, Jeffries & Klinger, Moorhead, Minn., on brief.

Before MATTHES, Senior Circuit Judge, BRIGHT and HENLEY, Circuit Judges.

BRIGHT, Circuit Judge.

From February 18 through April 8, 1974, appellant Jamestown Farmers Elevator, Inc., previously known as Mutschler Grain Company,[1] a corporation owned by Donald Mutschler and his father, Fred Mutschler, essentially completed the balance of deliveries on a sale of 30,000 bushels of barley to General Mills for $1.22 per bushel at a time when that delivered grain was worth more than $3 per bushel on the open market. Jamestown Farmers Elevator contends it made those deliveries by reason of economic duress exercised against it by General Mills. Appellant seeks to recover the difference between $1.22 per bushel and the market price of the grain on various dates of delivery. General Mills denies any coercive conduct on its part and contends that Jamestown Farmers Elevator delivered the grain to General Mills pursuant to a contract entered into the previous year. The district court rejected the economic duress issue as a matter of law and submitted the case to

the jury to award damages to Jamestown Farmers Elevator if the jury determined that General Mills had breached the 1973 grain sales contract, otherwise to dismiss the action. Jamestown Farmers Elevator appeals from a judgment of dismissal entered upon a jury verdict.[2]

For the reasons stated herein, we reverse and direct that the issue of economic duress be submitted to a jury. Our jurisdiction rests on diversity of citizenship and the requisite amount in controversy. The case is governed by North Dakota substantive law.

I. *Facts and Proceedings in the District Court.*

We briefly summarize the facts. In a telephone conversation on February 1, 1973, Donald Mutschler, manager of Mutschler Grain, agreed with Patrick Kluempke, a grain buyer for General Mills, that Mutschler Grain would sell 30,000 bushels of No. 2 barley, weight 45 pounds per bushel or better, for $1.22 per bushel, f. o. b. Jamestown, North Dakota, with delivery to be made during March and April of 1973. The means of transportation became a matter of dispute. Donald Mutschler testified that Kluempke agreed to arrange for commercial grain trucks to pick up the barley in Jamestown. Kluempke testified that the parties agreed to shipments by rail.

Following this telephone conversation, General Mills forwarded a confirmation of the order to Mutschler Grain. The confirmation specified "rail" shipment over the Burlington Northern Railway. Mutschler did not acknowledge or return the confirmation form. This same confirmation procedure had been followed in a January 1973 contract for the sale of 10,000 bushels of barley entered into by these parties. That confirmation also called for rail shipment. Mutschler Grain shipped that barley by rail

1. Because appellant operated as Mutschler Grain Company at all times here relevant, we shall frequently refer to it by that name.

2. The district court considered all issues raised on this appeal, and other issues, in denying

appellant's post-trial motion for a new trial. That decision is reported as *Jamestown Farmers Elevator, Inc. v. General Mills, Inc.,* 413 F.Supp. 764 (D.N.D.1976).

and fully performed its obligations under the January contract.

Mutschler Grain delivered only 3,734 bushels of grain to General Mills during March and April of 1973 under the February 1973 grain contract. It shipped the barley by rail. Kluempke testified that during the next several months, he contacted Donald Mutschler and received assurances that the grain would be shipped as soon as transportation was available. The testimony, however, indicated that in 1973 railroad boxcars were in short supply.

Kluempke also testified that during this period of time, he discussed with Donald Mutschler the alternative of obtaining truckers who might "backhaul" the grain which was destined for delivery to General Mills' terminals at Great Falls, Montana, or Portland, Oregon, at a freight rate equal to the existing favorable rail rate.[3] Kluempke testified that after May 1, 1973, he orally advised Donald Mutschler that the contract would be extended[4] to give Jamestown Farmers Elevator the opportunity to fulfill its obligations under the contract and that Kluempke confirmed the extension by an undated letter written in July or August of 1973.

Following a telephone conversation on October 5, 1973, Kluempke wrote to Mutschler Grain demanding the balance of barley due under the February contract and adding:

> We have given you more than sufficient time to ship the remaining open balance. If we do not receive application on this contract within the next thirty days, we will deem it necessary to buy in the remaining balance and charge the additional cost back to you.

Upon receiving no reply from Mutschler Grain Company, General Mills wrote the appellant on November 8, 1973, as follows:

Mr. Kluempke's letter to you of October 5, 1973 explained that you must start applying barley to this contract within thirty days or we will deem it necessary to buy-in the remaining balance on this contract and to charge the additional cost back to you. On October 26, 1973, Mr. Kluempke contacted you by telephone concerning this matter and you told him you would begin shipping barley to apply on our purchase contract 426. To date we have received only the two cars mentioned above.

We are now charging you for the balance of the contract based on today's value of $1.94 per bushel net Jamestown.

The attached invoice for $18,905.40 is due and payable upon receipt of this letter.

On November 16, 1973, Donald Mutschler responded to this demand by repudiating the contract, expressing disagreement with Kluempke's version of the parties' agreement, and denying any liability for damages claimed by General Mills as follows:

> On February 1, 1973 I sold 30,000 bushels of feed barley to Mr. Kluempke. In this sale agreement Mr. Kluempke agreed to send me 20 to 25 trucks, which would load with barley to be applied on this contract. Only one truck contacted me on this agreement; however, failed to come to Jamestown to load. The two cars that were applied would have filled the contract if the promised trucks would have arrived. As everyone must know railroad cars have been in a demand for quite some time. We would not have sold this grain if a trucking agreement had not been made.

> Since no trucks were delivered to our elevator for shipment of the barley, I felt that our original agreement was terminated.

> When shipments are not made according to contract we reserve the right to *extend time of shipment*, cancel or buy in the grain for the seller's account, unless at seller's request previous to expiration of limit of shipment, other arrangements are made to cover seller's failure to make shipment within specified time of this contract. (Emphasis added).

---

**3.** Kluempke testified that General Mills had received a favorable rail transportation rate for westbound grain.

**4.** The confirmation order which General Mills had sent to Mutschler Grain contained the following provision relating to extension:

Donald Mutschler admitted that between the April 30th deadline for delivery and his November 16th letter, he had not protested continuance of the contract or sought cancellation. He characterized the continuance of the agreement for delivery by truck during this period as a "good deal."

Notwithstanding the parties' previous correspondence of November 8 and November 16, 1973, Kluempke continued by telephone to demand delivery of the balance of barley under the February 1, 1973 contract. The final telephone conversation occurred on February 18, 1974, when Mutschler Grain agreed to resume shipments under the February 1973 barley contract. Fred Mutschler, Donald's father, quoted Kluempke, as follows:

We're General Mills; and if you don't deliver this grain to us, why we'll have a battery of lawyers in there tomorrow morning to visit you and, and then we are going to the North Dakota Public Service [Commission]; we're going to the Minneapolis Grain Exchange and we're going to the people in Montana and there will be no more Mutschler Grain Company. We're going to take your license[.]

Appellant's economic duress claim rests on this conversation. Fred Mutschler testified that he took these threats seriously, and that he believed General Mills could obtain revocation of appellant's grain dealer's license and put it out of business. Based on this conversation, he directed Donald Mutschler to complete deliveries under the February 1973 contract. Thereafter, between February 18 and April 8, 1974, Mutschler Grain shipped somewhat more than 22,000 bushels of barley in trucks supplied by General Mills.

In its complaint, appellant Jamestown Farmers Elevator (Mutschler Grain) sought to recover the excess of market price, at the time of delivery of the approximately 22,000 bushels of barley, over the contract price of $1.22 per bushel on theories of implied contract, unjust enrichment, and as damages for economic coercion and duress. In essence, appellant Jamestown Farmers Elevator contended that its contract obligations under the 1973 contract had terminated on April 30; that General Mills had breached the contract by not supplying trucks to haul the grain during the March-April 1973 delivery period; and that by reason of General Mills' breach of the February 1973 contract, General Mills was not entitled to delivery of the barley at the price set by the February 1, 1973 contract, but must pay the market price for the barley at the 1974 delivery dates. The district court submitted appellant's breach of contract theory to the jury, instructing as follows:

If you find that General Mills breached the contract, then Jamestown Farmers Elevator is entitled to recover from General Mills the amount by which the fair market value, as of the date of delivery of the barley delivered after March and April, 1973, exceeded the price that General Mills paid to Jamestown Farmers Elevator for the barley. * * *

If you find instead that General Mills did not breach the contract, or if you find that Jamestown Farmers Elevator did breach the contract, then, in either event, Jamestown Farmers Elevator is not entitled to recover, and you should return a verdict for the defendant.

As we have already observed, the jury returned a dismissal verdict in favor of General Mills.

As we read appellant's brief, its principal contention centers around the district court's refusal to instruct the jury on the issues of economic coercion. Appellant contends that as a matter of law, the February 1 contract terminated on April 30, 1973, or in any event, at some time prior to February 18, 1974, the date appellant agreed to continue deliveries of barley against the 1973 contract. Appellant contends the threats made by General Mills' representative, Patrick Kluempke, constituted economic duress, forcing appellant to deliver grain it was not obligated to deliver. Appellant does not now challenge the jury determination underlying its dismissal verdict, that appellant had breached its obliga-

tion to make timely delivery of barley under the February 1973 contract.

We turn to the economic duress contention.

## II. *Economic Duress.*

In *Production Credit Association of Minot v. Geving*, 218 N.W.2d 185 (1974), the Supreme Court of North Dakota discussed the doctrine of "business compulsion" or "economic duress[,]" *id.* at 195. That court, with respect to this doctrine, quoted with approval 25 Am.Jr.2d, *Duress and Undue Influence*, § 7, p. 363:

> To constitute business compulsion there must be more than a mere threat which might possibly result in injury at some future time, such as a threat of injury to credit in the indefinite future. It must be such a threat that, in conjunction with other circumstances and business necessity, the party so coerced would fear a loss of business unless he entered into the contract as demanded. The pressure must be wrongful, and not all pressure is wrongful. 'Business compulsion' is not established merely by proof that consent was secured by the pressure of financial circumstances, or by the fact that one party insisted upon a legal right and the other party yielded to such insistence.
> \* \* \* [*Id.* at 196.][5]

■■ Whether particular facts are sufficient to constitute a defense of economic duress or business compulsion is a matter of law for the court, while the question of whether the facts alleged actually exist is a matter for the jury. *Oskey Gasoline & Oil Co. v. Continental Oil Co.*, 534 F.2d 1281, 1286 (8th Cir. 1976); *Production Credit Association of Minot v. Geving, supra,* 218 N.W.2d 195. The party claiming duress must show (1) that it involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of

wrongful coercive acts of the other party. *Oskey Gasoline & Oil Co. v. Continental Oil, supra* at 1286; *W. R. Grimshaw Co. v. Nevil C. Withrow Co.*, 248 F.2d 896, 904 (8th Cir. 1957), *cert. denied*, 356 U.S. 912, 78 S.Ct. 669, 2 L.Ed.2d 585 (1958); Restatement, Second, Contracts §§ 317, 318 (Tent.Dr. No. 11, Apr. 15, 1976); Restatement, Contracts §§ 492, 493 (1932).

■ As we have already commented, the district court declined to submit an instruction on economic duress. In its posttrial opinion, the district court concluded that because the jury's verdict established that General Mills had not breached the contract by May 1, 1973, Mutschler Grain's obligation to make delivery continued beyond that date and through February 18, 1974, and, thus, the demands made by General Mills were not wrongful. *See* 413 F.Supp. 773–74. However, this approach ignores the undisputed evidence of a repudiation of the contract by Jamestown Farmers Elevator on November 16, 1973, and the "buy-in" notice given by General Mills in its letter of November 8, 1973. Those two documents indisputably show that in November of 1973, General Mills and Mutschler Grain both acted to terminate any obligations to deliver or accept the grain. Under the circumstances, General Mills could not validly claim on February 18, 1974 the right to receive additional barley shipments under the February 1973 contract. Of course, it possessed the right to collect damages for the breach of contract.

■■ We recognize that good faith insistence upon a legal right which one believes he has usually is not duress, even if it turns out that that party is mistaken and, in fact, has no such right. However, threats to put another out of business or deprive another of his livelihood, *see Laemmar v. J. Walter Thompson Co.*, 435 F.2d 680 (7th Cir. 1970); *Mayerson v. Washington Mfg. Co.*, 58 F.R.D. 377, 383–84 (E.D.

---

**5.** Although the *Geving* case did not expressly endorse the economic duress doctrine, we believe that if presented with the question, the North Dakota court would adopt the doctrine of business compulsion. This court also has recognized the economic duress doctrine in

contract litigation. *See Oskey Gasoline & Oil Co. v. Continental Oil Co.*, 534 F.2d 1281, 1285–88 (8th Cir. 1976); *W. R. Grimshaw Co. v. Nevil C. Withrow Co.*, 248 F.2d 896 (8th Cir. 1957), *cert. denied*, 356 U.S. 912, 78 S.Ct. 669, 2 L.Ed.2d 585 (1958).

Pa.1972); *Balling v. Finch*, 203 Cal.App.2d 413, 21 Cal.Rptr. 490 (2d Dist. 1962), or threats to institute criminal or regulatory proceedings, *see Balling v. Finch, supra*; Restatement, Second, Contracts, § 318 (Tent.Dr. No. 11, Apr. 15, 1976); 13 Williston on Contracts, §§ 1601–07, 1612–15 (3d Ed., W. Jaeger 1970), made in order to secure another's consent to an undeserved bargain for one's own private benefit, may be sufficiently wrongful to constitute duress.

■ Appellant argues that if it was under no preexisting duty to deliver on February 18, 1974, it is entitled to restitution without having to prove anything more. We disagree. Mutschler Grain could orally contract on February 18, 1974, to sell barley to General Mills at the old contract price of $1.22 per bushel. In the absence of duress, Mutschler Grain would be bound by that agreement. We therefore turn to the claim of economic duress.

■ Accepting the Fred Mutschler testimony as true, and viewing the record most favorably to appellant, we conclude that Mutschler Grain can make out a claim of duress against General Mills. However, Fred Mutschler's version of the telephone conversations is disputed and other circumstances bear upon the validity of the duress claim. Before the claim of economic coercion or duress can be established here, a jury must resolve the following fact questions in appellant's favor:

(1) Were the threats actually made? Patrick Kluempke testified that he merely asked whether Mutschler Grain would load the trucks General Mills had sent and offered to submit the dispute to arbitration.

(2) Did Mutschler Grain Company because of fear induced by threats *involuntarily* submit to the demands of General Mills? The jury must evaluate whether Fred Mutschler acted solely under the influence of the threat or whether delivery of the grain was made because Fred Mutschler believed that Mutschler Grain had a legal or moral obligation to fulfill the terms of the February 1, 1973 grain sales contract. In cross-examination testimony, Fred Mutschler alluded to demands for delivery of grain made by his company on one of its customers, similar to the demand made by General Mills for contract performance by Mutschler Grain. In this testimony, he related:

. And we had another deal going where a guy didn't deliver his wheat and so we were going after him so I figured, "How can we do this to General Mills," you know "because the farmer reneged on us so we can't do that to them—

\*  \*  \*  \*  \*  \*

and expect to go out and sue this farmer and get that money from him." [6] Moreover, Mutschler Grain shipped more than 22,000 bushels of barley over the seven-week period from February 18 through April 8, 1974, in 22 separate shipments without protest of any kind.

It also appears that Fred Mutschler consulted Wally Hoim, a field representative of Benson-Quinn Company,[7] who recommended the settlement of any contract dispute with General Mills in order to close the books on that transaction and permit an audit of Mutschler Grain.

(3) The jury will also have to determine whether the circumstances permitted alternative action. Although Fred Mutschler testified that he ordered that Mutschler Grain make delivery of barley on and after February 18, 1974, to General Mills in response to the alleged threats, other evidence bears upon the existence of alternatives available to Mutschler Grain. Mutschler Grain refused to load grain trucks on at least two occasions prior to February 18, 1974, and it ulti-

---

**6.** The quoted testimony from the trial record originated in a pretrial deposition. The trial court ruled the testimony admissible. The record presented on appeal does not disclose whether Mutschler at the trial expressly admitted making this statement at the pretrial depo- sition. For our purposes, we assume that Mutschler had so testified.

**7.** The Benson-Quinn Company is a Minneapolis grain commission firm through which appellant made the great majority of its grain sales.

mately refused delivery of 3,850 bushels of barley of the 30,000 bushels called for by the February 1973 contract.

■ Appellant bears a heavy burden in establishing its claim of economic duress, but in light of the foregoing evidence, we cannot say that appellant cannot prevail under a construction of that evidence most favorable to Mutschler Grain. *See* Restatement of Contracts, § 492, comment c, which reads as follows:

The length of time that elapses between the act or threat which is asserted to amount to duress, and the transaction attacked is likewise important only as evidence bearing on the issue of whether fear produced by the act or threat continues to operate at the time that the transaction is entered into, in such force as to preclude free judgment. *A state of such fear may continue long after the threats that cause it, but in determining the probability of this, time, distance, opportunity to obtain disinterested advise and protection, are all important.* (Emphasis added).

■ Upon retrial of this issue, should the finder of fact resolve the disputed factual matters concerning duress favorably to appellant, appellant will be entitled to avoid its 1974 agreement to deliver grain to General Mills for $1.22 per bushel and thus obtain restitution of the difference between the market value of the barley on the dates of delivery and the contract price of $1.22 per bushel which General Mills actually paid.

In that event, however, General Mills will be entitled to a setoff in the amount of its contract damages. The jury has determined that appellant breached the February 1973 barley contract, and as we have already noted, appellant does not dispute this jury finding. General Mills' right to demand delivery of the grain, however, terminated on November 8, 1973, as we have held. General Mills' letter of November 8, 1973, assessed damages for this breach at $.72 per bushel (difference between market price at $1.94 per bushel and contract price at $1.22 per bushel) on 26,257.50 bushels,

totaling $18,905.40. However, appellant contends that, notwithstanding its breach, its obligation to deliver the barley terminated earlier, on April 30, 1973, and that is the date for calculating damages sustained by General Mills. If appellant's argument is correct, General Mills would be entitled to no damages for breach of contract, and, thus, no setoff against any recovery by appellant, because the market price for barley on April 30, 1973, was below the price of $1.22 per bushel set by the February 1, 1973, contract. Accordingly, we must examine appellant's contentions that its obligations to deliver grain ended on April 30, 1973.

### III.  *Cover.*

Patrick Kluempke testified that when Mutschler Grain Company failed to deliver the entire 30,000 bushels called for under the February 1, 1973, contract during the delivery period which ended April 30, or May 1, 1973, General Mills purchased barley in the cash market (at less than $1.22 per bushel) to meet its own resale commitments incurred in partial reliance on Mutschler's contract to deliver 30,000 bushels of barley by April 30, 1973. According to the appellant, this testimony establishes as a matter of law the buyer's election of the Uniform Commercial Code remedy of "cover;" that this election terminated Mutschler's obligation to deliver; and that General Mills suffered no damage from Mutschler's breach of contract.

The Code sections relating to a buyer's remedy for default provide, in part, as follows:

Buyer's remedies in general—*   *   *—

1. Where the seller fails to make delivery *   *   * then with respect to any goods involved, *   *   * the buyer may cancel and whether or not he has done so may in addition to recovering so much of the price as has been paid

a. "cover" and have damages under the next section as to all the goods affected whether or not they have been identified to the contract; or

b. recover damages for nondelivery as provided in this chapter * * *. [N.D.Cent.Code § 41–02–90 (U.C.C. § 2–711).]

"Cover"—Buyer's procurement of substitute goods.—1. After a breach within the preceding section the buyer may "cover" by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller.

2. The buyer may recover from the seller as damages the difference between the cost of cover and the contract price together with any incidental or consequential damages as hereinafter defined (section 41–02–94), but less expenses saved in consequence of the seller's breach.

3. Failure of the buyer to effect cover within this section does not bar him from any other remedy. [N.D.Cent.Code § 41–02–91 (U.C.C. § 2–712).]

The district court rejected the "cover" argument, ruling that:

Under NDCC 41–02–91, "cover" is not a mandatory remedy and there was no evidence brought out at trial sufficient to support an instruction to the jury that Defendant, General Mills, canceled or bought in the grain *for Jamestown Farmers (seller's) account.* [413 F.Supp. 771 (emphasis in original).]

We agree with this ruling.

Cover exists when the buyer makes a reasonable purchase or contract to purchase goods *in substitution for those due from the seller.* N.D.Cent.Code § 41–02–91(1) (U.C.C. § 2–712(1)). Kluempke's testimony establishes only that General Mills went into the open market to buy grain to meet its own sales commitments. The record contains no evidence that General Mills entered the market for the purpose of buying barley specifically for Mutschler Grain Company's account under the February 1, 1973 contract.

Moreover, a provision of the contract, quoted in note 4 *supra*, expressly gave General Mills the right either to buy for Mutschler's account *or* extend the date of delivery. Cover is an optional remedy under N.D.Cent.Code § 41–02–91 (U.C.C. § 2–712), and General Mills was within its rights under this clause of the contract to extend the delivery date. Further, the conduct of both parties for several months after April 30th remained consistent with a recognition of the continued existence of a grain sale-purchase agreement and neither party acted to terminate the contract until November of that year.

Finally, under North Dakota law, time is not of the essence in contracts for the sale of grain unless the parties expressly so state. In light of boxcar shortages, recognized by the parties, failure to deliver the barley on the specified date would not constitute a breach of contract, but merely would extend the time for delivery for a reasonable period thereafter. *See Farmers Union Grain Terminal Ass'n v. Hermanson,* 549 F.2d 1177, at 1182–1183 (8th Cir., 1977), and cases cited therein.

IV. *Validity of Extension Clause.*

The district court instructed the jury to determine whether the oral agreement reached by Donald Mutschler and Kluempke required General Mills to furnish trucks and further to determine whether additional terms of the written confirmation materially altered the oral agreement. The district court further advised that "additional terms of the written confirmation which did materially alter the oral agreement do not become a part of the contract."

Appellant argues that the district court erred in failing to hold as a matter of law that General Mills materially had altered the terms of the contract by including within its confirmation form the provision in the remedy section reserving to the seller "the right to extend time of shipment * * *." Mutschler also asserts that this provision is unconscionable and unenforceable. By these contentions, appellant seeks to reinforce its claims that the contract terminat-

ed on April 30, 1973, at a time when the cash market price for barley was below the contract price.

The district court fully considered these claims and denied them for reasons we find persuasive. We reject these claims on the basis of the district court's opinion. *Jamestown Farmers Elevator, Inc. v. General Mills*, 413 F.Supp. 764, 771–73.

## V. *Exemplary Damages.*

■ Appellant asserts that if it establishes its claim of economic duress, the jury may award punitive damages. The district court declined to instruct the jury upon punitive or exemplary damages.

N.D.Cent.Code § 32–03–07 provides:

*When jury may give exemplary damages.*—In any action for the breach of an obligation not arising from contract, when the defendant has been guilty of oppression, fraud, or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example and by way of punishing the defendant.

At the close of defendant's case, the district court ruled that appellant's action was one for breach of an obligation arising from a contract, and therefore plaintiff was not entitled to an instruction on the issue of exemplary damages under the statute. 413 F.Supp. at 774.

Here, Mutschler Grain seeks to avoid on grounds of economic duress its oral commitment made on February 18, 1974, to deliver the balance of the grain under the February 1973 contract. If successful, it may recover the market value of that grain at delivery dates less what it actually received. Recovery, if any, rests on principles of quasi-contract or restitution which would serve to prevent appellee's unjust enrichment at the expense of appellant. Appellee's duty to make restitution arises from an agreement or contract implied by law. Restatement, Restitution, Part I Introductory Note, pp. 4–10 (1937).

Mutschler Grain alleged that its 1974 agreement to deliver barley was the product of duress and may be avoided because

General Mills, by reason of its own breach of contract, could not demand delivery of barley after April 30, 1973. Some courts have held that exemplary damages are not available in actions to rescind a contract for duress, because violation of contractual obligations will not warrant punitive damages. Allegations of oppressive threats or other wrongful behavior do not change the result. *See Stamatiou v. United States Gypsum Co.*, 400 F.Supp. 431, 439–40 (N.D. Ill.1975), *aff'd mem.*, 534 F.2d 330 (7th Cir. 1976). Other cases hold to the contrary, e. g., *Furman v. Gulf Ins. Co. of Dallas*, 152 F.2d 891 (8th Cir. 1946). The rule has been stated that duress, unlike deceit, is not an independently actionable tort and that the victim of duress is limited to avoidance of the contract, with no affirmative action for damages. Restatement, Second, Contracts, Ch. 13, Topic 2, Introductory Note, p. 86 (Tent.Dr. No. 11, Apr. 15, 1976).

■ Substantial authority supports the district judge's rejection of appellant's claim for exemplary damages, particularly in light of appellant's reliance on General Mills' alleged breach of contract to demonstrate that no obligation to deliver barley existed after April 30, 1973. Appellant has cited no relevant North Dakota case in support of its claim for punitive or exemplary damages. We are bound to give great weight to the district court's construction of the applicable state law. *Rodeway Inns of America, Inc. v. Frank*, 541 F.2d 759, 767 (8th Cir. 1976), *pet. for cert. filed*, 45 U.S. L.W. 3490 (U.S. Jan. 8, 1977); *Luke v. American Family Mutual Ins. Co.*, 476 F.2d 1015, 1019–20 (8th Cir.) (*en banc*), *cert. denied*, 414 U.S. 856, 94 S.Ct. 158, 38 L.Ed.2d 105 (1973). Accordingly, we reject appellant's contentions that the trial court erred in refusing to submit to the jury a claim for exemplary damages.

## VI. *Summary.*

Appellant is entitled to a new trial on its claim of economic duress. We reject all other assignments of error.

The jury verdict dismissing the claims of Jamestown Farmers Elevator (Mutschler

Grain) against General Mills establishes that General Mills' version of the contract is correct and that Mutschler Grain Company breached the contract by failing and refusing to deliver 30,000 bushels of barley during the contract delivery period of March-April 1973, as extended by General Mills to November 8, 1973. The record establishes that Mutschler Grain expressly repudiated the contract in its letter of November 16, 1973, thus confirming the breach.

General Mills' letter dated November 8, 1973, with appended invoice, established its entitlement to damages in the sum of $18,-905.40 as of November 8, 1973, for Mutschler Grain Company's failure to deliver 26,257.50 bushels of barley.[8]

Thereafter, between February 18th and until April 8th, 1974, Mutschler Grain Company delivered 22,426 bushels of barley to General Mills. Appellant, if successful on its economic coercion claim, is entitled to payment for that barley at the market price f. o. b. Jamestown at the times of each delivery, less what General Mills actually paid. However, any recovery must be offset by the aforesaid sum of $18,905.40, due

General Mills for breach of contract. That computation may be made under appropriate instructions by the jury or by the district court on retrial.[9]

Affirmed in part, reversed in part, and remanded for a new trial. No costs are awarded.[10]

### ORDER ON PETITION FOR REHEARING

Appellant Jamestown Farmers Elevator requests a rehearing on the issue of cover, suggesting that this court overlooked the district court's erroneous failure to submit any instruction whatsoever on that issue despite the presence of a genuine question of fact on the matter. Appellant points to language in our opinion at 1295 n.10, which could be taken to mean that we mistakenly concluded that the issue was submitted to the jury.

[17] The district court correctly denied appellant's requested instruction to the effect that appellant had established General Mills' cover as a matter of law. That was the only alleged error relating to the cover issue ever objected to in the district court

---

8. We do not understand that Jamestown Farmers Elevator disputes this computation. However, we have noted some minor mathematical discrepancies in computations made by the parties regarding amounts of grain actually delivered. These computations should be reviewed and corrected on retrial.

9. In 1974, General Mills paid $1.22 per bushel for the 22,426 bushels of barley delivered by Mutschler Grain after February 18th, less $3,041.50, which it claimed as damages for Mutschler's failure to deliver 3,850 bushels, the balance of the 30,000 bushel contract remaining after all 1973 and 1974 deliveries, according to computations made by General Mills. Appellant asserts a right to recover this amount in any event. If Mutschler Grain proves its claim of economic coercion, those undelivered bushels will be accounted for in the offsetting claim of General Mills for breach of contract for failing to deliver the balance of grain due on November 8, 1973. If appellant fails in this economic duress claim, the existing dismissal must stand, for the "new" agreement called for delivery of the balance of barley during 1974, and appellant failed to deliver 3,850 bushels of the amount called for under that "new" agreement of February 18, 1974. For that failure of delivery or breach, General Mills properly off-

set those damages against the amount due appellant at $1.22 per bushel for grain received.

10. At the close of all evidence, the appellant's counsel argued that the contract had been repudiated by the seller on November 16, 1974, thus terminating Mutschler Grain's duty to deliver. The trial judge advised that he would take matters under advisement until the next day. However, the next morning appellant's counsel argued only that as a matter of law, the grain sales contract of February 1, 1973, had terminated by reason of General Mills' "cover" on May 1, 1973. The court properly ruled that the cover issue was for the jury's consideration. This shift of position by appellant may well have led the trial judge to believe appellant had abandoned its reliance on the November repudiation, choosing instead to assert a right of recovery based solely upon a contract termination date of May 1, 1973, which would eliminate General Mills' setoff for its damages for breach of contract. We have considered this aspect of the record and appellants' failure to otherwise demonstrate error on several issues as a proper basis for denying appellant any costs on appeal.

or in this court. Although, as we noted in our opinion at p. 1295 n.10, the district judge commented that he believed there was a jury question on the cover issue, appellant never requested as an alternative that the factual issue of "cover" be submitted to the jury for its determination.

It is now far too late in the day for appellant to raise this new claim of error. The petition for rehearing is denied.