**Jerome James ANSELMO, Appellant,**

v.

**MANUFACTURERS LIFE INSURANCE COMPANY, Appellee.**

No. 84–2391.

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1985.

Decided Aug. 30, 1985.

Rehearing Denied Sept. 26, 1985.

**418**

Hollis H. Hanover, Kansas City, Mo., for appellant.

Edwin L. Noel, St. Louis, Mo., for appellee.

Before HEANEY, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BOWMAN, Circuit Judge.

HEANEY, Circuit Judge.

Jerome Anselmo appeals from the district court's order granting Manufacturers

Life Insurance Company's (Manu-Life) motion for summary judgment in his action against Manu-Life for breach of an employment contract and fraudulent misrepresentation. Anselmo contends that the district court, 595 F.Supp. 541, erred in ruling that a release of claims executed by Anselmo, in favor of Manu-Life, barred all claims in this action. Anselmo claims that the release was invalid because it was executed under duress. He also argues that the release, even if valid, does not bar his claim for fraudulent misrepresentation. We agree with the district court's determination as to the effect of Anselmo's release and we affirm.

## I.  BACKGROUND.[1]

Anselmo began employment discussions with Manu-Life in the Spring of 1980. After a series of conversations and interviews, he was hired and began work on July 18, 1980, as a Branch Manager for Manu-Life's Kansas City office. Anselmo believed that he was being hired for a three-year term.

On April 7, 1981, Anselmo signed a "Branch Manager's Agreement." The agreement provided: "Either party may terminate this Agreement at any time by giving the other party Thirty (30) days' notice in writing to that effect." It further provided that "[o]nce termination takes place, no further compensation whatsoever will be paid under this Agreement." Manu-Life believed that this agreement governed the terms of Anselmo's employment.

Manu-Life sent three letters to Anselmo detailing the terms of his employment. Each of the letters, dated August 18, 1980, June 25, 1981, and January 12, 1982, delineated Anselmo's projected earnings for the years 1980 through 1983. Each letter provided that Anselmo would receive a base or "guaranteed" salary each year, plus potential bonus. Anselmo believed that these

---

**1.** Because the district court disposed of this case by way of summary judgment, we review the facts in the light most favorable to Anselmo.

*Bryan v. Aetna Casualty & Surety Co.,* 381 F.2d 872, 875 (8th Cir.1967).

letters governed the terms of his employment.

By the summer of 1982, Manu-Life had lost confidence in Anselmo's ability to manage. On June 28, 1982, a Manu-Life representative met with Anselmo in a hotel room and told him that his employment had ended. Anselmo was told not to return to the office, and was given a letter of resignation to sign.

Anselmo called his attorney who advised him not to sign the letter until he had taken it home and studied it. Anselmo took the letter home, consulted his attorney again, consulted his wife, and then signed it. The resignation letter, in pertinent part, provided:

> In accordance with our discussions, this is to confirm that you will receive four months compensation at your present guaranteed monthly rate beginning July 1, 1982, and ending October 31, 1982. You may elect to receive the compensation monthly, or in one lump sum. Please indicate your choice below.
>
> All payments agreed to in this letter are in complete discharge of all obligations under your Branch Managers appointment, except as may be accrued under the company's Pension Plan.

Anselmo returned the signed letter to Manu-Life's agent on June 29, 1982, and asked for his four months severance pay in one lump sum. Anselmo then received and cashed Manu-Life's check for $13,933.32.

Nine months later, Anselmo instituted this action contending that Manu-Life breached its contract by discharging him prior to the expiration of his three-year term. Anselmo contended that he had a guaranteed three-year contract based on the three letters he received from Manu-Life detailing the terms of his compensation. He also argued, in the alternative, that Manu-Life had fraudulently misrepresented that he was being hired for a three-year term.

Manu-Life moved for summary judgment. The company contended that the employment contract was not comprised of the three letters but, rather, the branch manager's agreement and, as such, was a contract at will. It contended that the fraudulent misrepresentation claim could not be sustained because it was not premised on a representation of fact. The company also argued that, in any event, each of Anselmo's claims was barred by the release.

The district court granted Manu-Life's motion. The court reasoned that although the three letters constituted Anselmo's employment contract, they merely detailed his compensation and did not imply that Manu-Life had agreed to employ him for a three-year term. Further, the court dismissed the fraudulent misrepresentation claim, ruling that it could not be predicated upon a mere promise to do something in the future. Finally, the court determined that the release effectively foreclosed Manu-Life's potential liability on all counts in the lawsuit.

On appeal, Anselmo argues that the district court erred in holding that the employment contract was not for a three-year term. He further argues that the release is not valid as to his compensation contract because it was executed under duress; and, even if found to be valid, it does not bar his claim for fraudulent misrepresentation.

We need not reach the question as to whether the contract was for a three-year period because, in our view, the release was valid and barred each of Anselmo's claims.

## II. DISCUSSION.

Anselmo does not deny that he signed a letter of resignation and that the letter discharged Manu-Life from any liability arising out of his compensation contract. He does argue, however, that 1) the release is invalid because it was obtained by duress, and 2) even if found to be valid, the release does not bar his fraudulent misrepresentation claim.

Whether particular facts are sufficient to constitute duress is a matter of law for the court, while the question of whether the facts alleged actually exist is a

matter for the fact finder. *Jamestown Farmers Elevator, Inc. v. General Mills*, 552 F.2d 1285, 1290 (8th Cir.1977). A party trying to invalidate a release must show that the other party's wrongful acts caused him to be "bereft of the quality of mind essential to the making of a contract." *Wolf v. St. Louis Public Service Co.*, 357 S.W.2d 950, 955 (Mo.App.1962).

■ According to Anselmo's version of what happened in the hotel room on the evening of June 28, 1982, he was forced to sign the release because of the pressure created by Manu-Life's agent. The agent told him he must sign the letter. If he refused, he would not receive severance pay and he would be denied references for future employment. Anselmo then contacted a lawyer, but he received no legal advice. He signed the release and delivered it to Manu-Life's agent the next day.

These facts, viewed most favorably to Anselmo nevertheless fail to establish that he entered into the termination agreement bereft of his free will. Although he surely confronted a difficult dilemma—accepting the termination perks or pursuing his legal rights under the employment agreement—the fact that the choice was difficult does not mean that he lacked the requisite free will to make the decision.

Indeed, the contrary seems to be true. Anselmo, an experienced businessman, took ample time and precautions before signing the release. He took the agreement home and consulted both his wife and an attorney before signing it.

We conclude that Anselmo's release was freely given and was not the product of duress. The language of the release is clear and unequivocal and released Manu-Life of all potential liability arising out of the compensation contract.

■ Moreover, contracts induced by duress are voidable, not void. *Arthur Fels Bond & Mortgage Co. v. Pollock*, 347 Mo. 853, 149 S.W.2d 356, 359–60 (1941). "A party, who is entitled to avoid a contract on the ground of duress should repudiate it promptly after the duress has been re-

moved. Silence and acquiescence for a considerable period thereafter, action in accord with it, and acceptance of benefits under it, amount to a ratification." *Weisert v. Bramman*, 358 Mo. 636, 216 S.W.2d 430, 435 (1948). *Accord Aurora Bank v. Hamlin*, 609 S.W.2d 486 (Mo.App.1980) (conduct in recognition of the contract while duress continues does not constitute ratification).

■ Anselmo signed the resignation letter on June 28, 1982, and received and cashed the check from Manu-Life on July 15, 1982. Moreover, on a "Personal History Form," dated October 4, 1982, which Anselmo completed while applying for another job, Anselmo represented that he had resigned from Manu-Life. Furthermore, on a "Career Sales Report" for Equifex Services, Inc., dated October 11, 1982, the "Employment Record" section states:

> Jerome J. Anselmo had formerly been employed as branch manager of the Manulife Company * * *. He enjoyed a satisfactory work record and standing with this firm and resigned this employment of his own volition. Reason for resignation was not known. However, it was thought that he did wish to get back into personal production. It was stated that he did perform well for them and did do a good job and would be considered for re-hire with them at a future time.

It was not until April 27, 1983, that Anselmo filed this action against Manu-Life. Thus, because Anselmo accepted and cashed Manu-Life's check, represented that he had resigned, rather than being terminated, and because Manu-Life did give Anselmo favorable references, Anselmo accepted the benefits of the waiver, acted in accordance with it, and ratified the contract, thereby waiving any duress claim he may otherwise have had.

■ The only remaining question is whether Anselmo can bring a separate action for fraudulent misrepresentation. It is well settled that a valid fraud claim is relinquished when the victim of the fraud enters into a subsequent agreement with the perpetrator concerning the same subject matter:

The authorities are unanimous in holding that where one has been induced by fraud to enter into a contract and, after discovery of the fraud, enters into an agreement concerning the subject matter of the contract, * * * he is conclusively deemed to have waived any claim for damages on account of fraud.

*Philips Petroleum Co. v. Rau Construction Co.,* 130 F.2d 499, 502 (8th Cir.), *cert. denied,* 317 U.S. 685, 63 S.Ct. 260, 87 L.Ed. 549 (1942).

Anselmo alleges that he was induced into an employment agreement with Manu-Life. The alleged misrepresentation upon which Anselmo's charge of fraud was based was to the effect that his job would be secure for three years. Anselmo then discovered that this representation was indeed false. He then, fully apprised of all the true facts, entered into a termination of employment agreement with Manu-Life. In that agreement, Anselmo was awarded substantial concessions: the severance pay to which he was not otherwise entitled, and the favorable reference letters. By entering into this subsequent agreement concerning the length of his employment, fully aware of the supposed fraud, he waived any right he may have had to bring that claim.

Finally, we conclude that Anselmo's appeal is frivolous. Anselmo does not argue that the district court made any incorrect findings of fact or that it failed to consider facts which Anselmo believed would have been helpful to his claim. This Court has announced that it would "consider assessing just damages as well as double costs for taking frivolous appeals on issues clearly resolved." *Ueckert v. Commissioner,* 721 F.2d 248, 250 (8th Cir.1983). This case presents just such an appeal, and we therefore impose on Anselmo double the costs of this appeal pursuant to Rule 38 of the Federal Rules of Appellate Procedure.

We affirm the judgment of the district court.