Jerome JOSEPH, Plaintiff,

v.

The CHASE MANHATTAN BANK,
N.A., Defendant.

No. CV–87–4065.

United States District Court,
E.D. New York.

Sept. 10, 1990.

Williamson Eisenstadt & McLoughlin,
Hicksville, N.Y., for plaintiff.

Chase Manhattan Bank, N.A., Litigation
Div., New York City, for defendant.

## MEMORANDUM AND ORDER

SIFTON, District Judge.

Plaintiff, Jerome Joseph, filed suit in state court alleging employment discrimination against him by defendant, Chase Manhattan Bank ("Chase" or the "Bank"). Chase removed the action to this Court on the ground that plaintiff's complaint states a cause of action under ERISA and possibly Title VII. This matter is before the Court on Chase's motion for summary judgment based on a release signed by Joseph or, in the alternative, for an evidentiary hearing limited to the factors listed in *Bormann v. AT & T Communications, Inc.*, 875 F.2d 399 (2d Cir.1989), to determine the validity of the release.

Chase asserts that plaintiff's claims are barred because plaintiff has signed a waiver of all claims against his employer,[1] the pertinent part of which reads as follows:

---

1. In the course of adjudicating defendant's 12(b)(6) motion on February 25, 1988, this Court determined that claims under ERISA and Title VII may be waived. *See Nichol v. Pullman Standard, Inc.*, 889 F.2d 115, 119 (7th Cir.1989); *In re HECI Exploration Co., Inc.*, 862 F.2d 513, 523 (5th Cir.1988); *District 29, United Mine Workers of America v. New River Company*, 842

"In return for the benefits available to me under the Program, the sufficiency of which is hereby acknowledge, I fully and finally waive, discharge and release any and all claims of whatsoever nature, known and unknown, other than my right to the enforcement of the terms of the Program and my rights solely to my retirement benefits which have been accrued, funded and vested to date, against The Chase Manhattan Bank, N.A., its current and future subsidiaries and divisions and their directors, officers, employees, attorneys and agents ('Chase'), including, without limitation, any and all rights and claims, including any eligibility prior to 18 months from the date of my voluntary retirement for reemployment with Chase, whether in law or in equity, which I or anyone acting through me, my estate or on behalf of me or my estate might otherwise have had or asserted, including, but not limited to, claims under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1966, the Age Discrimination in Employment Act of 1967, the Employee Retirement Income Security Act of 1974, Executive Orders 11246 and 11141, and all federal, state and local law claims, whether statutory or common law, including, but not limited to, those under the laws of the State of New York, and I waive all rights to share in any damages awarded under any class action or EEOC charge that may be brought against Chase based on my employment with or retirement from Chase."

Joseph signed the release in connection with his participation in Chase's voluntary retirement program ("VRP"). Under the VRP, employees aged 50–69 with at least ten years of service were given the opportunity to retire early with extra benefits,[2] in consideration for which they were to leave by December 31, 1987, and sign the aforementioned release of any claims against the corporation. The offer was made to qualified employees on October 21, 1987. Acceptance was required by signing a form before 5 p.m. on November 30, 1987. After acceptance, employees were given until December 14, 1987, to rescind their acceptance and continue their employment with Chase until such date as they chose to retire under their original retirement plan.

Joseph was employed by Chase from October 1980 through December 1987. He has an M.B.A. degree. His last position was second vice president, functioning as a capital budget analyst. Joseph was not eligible to retire in December 1987 under Chase's ordinary retirement plan but was eligible to accept the VRP. According to his deposition, Joseph wished to take advantage of the VRP but did not wish to sign the waiver, apparently because he was already considering suing Chase. There is no evidence presented, nor is there reason to infer that Chase knew of Joseph's intention to sue. He appears to have been offered the VRP package purely because he was a member of the eligible class. Joseph admits that no one at Chase advised him to accept the VRP, nor was he threatened with loss of his job or other repercussions if he did not sign.

Joseph attempted to return the acceptance form to Chase on November 18, 1987, with the waiver paragraph crossed out but was informed that in order to participate in the VRP he had to agree to the waiver and that therefore his counter offer was unacceptable. Thereafter, Joseph consulted with his attorney and decided to sign the acceptance form without the waiver paragraph crossed out. He returned it shortly before 5 p.m. on November 30, 1987, the last date for acceptance.

In response to defendant's motion, Joseph submitted an affidavit in which he claims that for nine of the last ten years of

---

F.2d 734, 737 (4th Cir.1988); *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 52, 94 S.Ct. 1011, 1021–22, 39 L.Ed.2d 147 (1974). Although Congress has been considering legislation to prohibit or restrict waiver in these circumstances, such a law has not yet been passed.

**2.** Under the VRP, employees received five years added on to their years of service and five years added on to their age and were then paid as if they had actually had those qualifications under the standard plan.

his employment he was underpaid according to Chase's salary schedule for a person in his position with his job experience. He also avers that his job performance had not been reviewed in the last four years of his employment despite Chase's policy to grant annual reviews. Joseph also states that at the time he signed the waiver he believed that other employees had been denied promotions and raises in an attempt to oust them. To support this allegation, plaintiff has submitted a copy of an office memo from Sheila Lefcourt, whose title is not clear, to John Mellor, who is referred to only as vice president. Plaintiff claims that this memo illustrates a plan to force the resignation of another employee, Pierre Regis.[3]

Also in the record is an affidavit from Joseph, submitted to the state court before removal in connection with an order to show cause, stating: "During the course of my employment with the defendant, I have been subjected to a number of injustices, most prevalent among them being defendant's failure to properly assess my performance and to grant me raises and promotions to which I am entitled." The record also contains an affidavit from plaintiff's attorney in 1988, Jack Solerwitz. This affidavit states that in 1979 plaintiff was promoted to second vice president in Chase's financial projects division but did not receive the appropriate pay raise according to Chase's official paychart[4] and that plaintiff was denied eight salary reviews between 1980 and 1987. Plaintiff's salary in December 1987, according to Solerwitz' affidavit, was $41,040.00.[5] Plaintiff has presented no evidence regarding his mental state or economic circumstances during the period he was offered and accepted the early retirement package.

In February 1988 this Court denied summary judgment after considering it *sua sponte* as a result of defendant's 12(b)(6) motion to dismiss. Defendant now moves for summary judgment on the basis that discovery has been completed and that plaintiff's deposition together with his failure to produce evidence sufficient to make out a valid claim of duress establish that such relief is now appropriate. Accordingly, this Court now reconsiders the motion de novo based on the evidence before it.

## DISCUSSION

In *Bormann v. AT & T Communications, Inc.*, 875 F.2d 399 (2d Cir.1989), a case involving a waiver of claims under ADEA, the Second Circuit adopted the Third Circuit's totality of circumstances standard for determining whether a waiver of claims agreement is valid. In *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 524 (3rd Cir.1988), the court announced that, "in the determination of whether a waiver was signed knowingly and voluntarily, review of the totality of the circumstances in which it was signed must be had." [6]

In *Bormann*, the Second Circuit listed eight factors to be considered in determining whether an employee signed a release "knowingly, willfully, and free from coercion": (1) plaintiff's education and business experience, (2) the amount of time plaintiff had possession of or access to the agreement before signing it, (3) the role of the plaintiff in deciding the terms of the agreement, (4) the clarity of the agreement, (5) whether plaintiff was represented by or consulted with an attorney, (6) whether the consideration given in exchange for the waiver exceeds employee benefits to which

---

**3.** This memo is at most inconclusive. It concerns the status of another employee who was apparently not performing up to standards but was so near to retirement that management was concerned with the propriety of firing him. The memo does not mention the VRP or plaintiff, nor does it establish any plot to force the resignation of the other employee. It therefore does not in any way bolster plaintiff's case.

**4.** The payment chart was not included with the papers submitted to this Court.

**5.** Solerwitz' affidavit is not based on personal knowledge and therefore is not admissible evidence.

**6.** The Third Circuit adopted this standard from a decision in the Southern District of New York in *EEOC v. American Express Publishing Corp.*, 681 F.Supp. 216 (S.D.N.Y.1988).

the employee was already entitled by contract or law, (7) whether the employer encouraged or discouraged the employee's consultation with an attorney, and (8) whether the employee had a fair opportunity to consult an attorney.

These factors weigh heavily in favor of the defendant. Plaintiff has an M.B.A. and considerable business experience. Plaintiff had the agreement for forty days before he was required to sign it and had fifteen days to reconsider Chase's offer after his counter offer was rejected. With respect to the plaintiff's role in determining the terms of the agreement, the fact that Chase's offer was accepted in its original form does not in any way bolster plaintiff's case. The offer, counter offer, and eventual acceptance of the original offer constitute a negotiation, and the fact that defendant was unable successfully to negotiate an acceptance of its original offer does not diminish the fact that plaintiff did bargain with the defendant. *See Bormann* 875 F.2d at 403 n. 1.

Plaintiff further admits in his deposition that he understood the agreement and that the terms were clear. In all events, the terms of the waiver should have been clear to a man of Mr. Joseph's education and business experience. Moreover, plaintiff had fair opportunity to consult and did consult with an attorney before signing the acceptance. Joseph disputes Chase's claim that employees were encouraged to consult with an attorney before agreeing to the VRP, but he does not claim that he was in any way discouraged from doing so. Finally, plaintiff received benefits in excess to those he was entitled to under the standard retirement plan in consideration for the waiver.

Defendant urges this Court to interpret the *Bormann* list of factors as being comprehensive. It is not. These factors comprise only some of those which can be considered in a totality of circumstances test, and the Court is careful to state that it is not attempting to delineate an exhaustive list of factors. *Bormann*, 875 F.2d at 403.

Plaintiff argues that, although the release appears effective under the criteria listed above, it should not be enforced because it was signed under duress. It is plaintiff's contention that the voluntary retirement plan constituted coercion in his case because, given the corporation's past pattern and the likelihood of future mistreatment, the opportunity to retire early with enhanced benefits was an option too good to pass up. Nothing in *Bormann* prohibits this Court from considering this argument.

The effectiveness of releases is governed by principles of contract law. *Bank of America National Trust and Savings Association v. Gillaizeau,* 766 F.2d 709, 715 (2d Cir.1985); Restatement (Second) of Contracts § 284 comment c (1981). Under New York law, "[a] contract is voidable on the ground of duress when it is established that the party making the claim was forced to agree to it by means of a wrongful threat precluding the exercise of his free will." *First National Bank of Cincinnati v. Pepper,* 454 F.2d 626, 632 (2d Cir.1972) (quoting *Austin Instrument, Inc. v. Loral Corp.,* 29 N.Y.2d 124, 324 N.Y.S.2d 22, 25, 272 N.E.2d 533, 535 (1971)).

The Restatement recognizes three types of duress: duress by physical compulsion, duress by threat, and undue influence. In this case there is no allegation of physical compulsion or overt threat such as a threat of firing. Nor does the doctrine of undue influence apply. That doctrine requires unfair persuasion by a person who, because of his relation to the victim, is justifiably assumed by the victim at the time to be one who will not act in a manner that is inconsistent with the victim's welfare. Restatement (Second) of Contracts § 176 (1981). There is no allegation that Chase overtly attempted to persuade Joseph to sign up for the voluntary retirement plan. Nor can the relationship between an employer that the employee believes is discriminating against him and that employee be one in which the employee is justified in assuming that the employer will not act in any manner inconsistent with his welfare. In fact, the opposite

assumption existed in this case. Joseph was certain that Chase was treating him unfairly.

Courts in the Second Circuit also recognize economic duress. "To establish economic duress a plaintiff must demonstrate that the agreement was obtained: (1) by means of wrongful threat precluding the exercise of free will; (2) under the press of financial circumstances; (3) where circumstances permitted no other alternative." *Nelson v. Stanley Blacker, Inc.,* 713 F.Supp. 107, 110 (S.D.N.Y.1989). Plaintiff argues that there was an implicit threat of further discrimination based on his prior mistreatment at Chase, but he fails to allege or present evidence as to his financial circumstances or the lack of any alternative. Indeed, the record demonstrates that he could have continued in his employment and pursued his discrimination claims administratively or in a court of law.

■ Plaintiff's allegations may also suggest a claim of constructive discharge. "Constructive discharge occurs when the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Less v. Nestle Co., Inc.,* 705 F.Supp 110, 114 (W.D.N.Y.1988) (quoting *Young v. Southwestern Savings and Loan Association,* 509 F.2d 140, 144 (5th Cir. 1975)). Working conditions must have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign. *Id.* Plaintiff claims that he was denied raises and promotions to which he was entitled and that he knew by Chase's actions toward him that he would continue to be denied his just compensation and therefore felt compelled to accept the VRP. Although these conditions may possibly constitute constructive discharge, they are insufficient to establish duress. Plaintiff could have simply resigned without accepting the VRP and then pursued the constructive discharge claim along with his discrimination claims. Instead, Joseph chose to waive his constructive discharge claim along with others in return for the enhanced benefit package. The fact that

he had this choice rules out a claim of duress which necessarily depends on the absence of choice.

This case is analogous to *O'Hare v. Global Natural Resources, Inc.,* 898 F.2d 1015 (5th Cir.1990), and *Anselmo v. Manufacturers Life Insurance Company,* 771 F.2d 417 (8th Cir.1985). In *O'Hare,* the employee's contract provided that he could only be discharged for cause but that if he was fired without cause he was entitled to certain benefits. After being notified that he was to be terminated for cause, the employee signed a settlement agreement under which he received some of the benefits he would have received had he been discharged without cause, in return for agreeing to a waiver. Applying the *Bormann* totality of circumstances test, the Fifth Circuit granted summary judgment for the employer when the employee later tried to set aside the release on grounds of duress. The court held that, where the plaintiff had the ability to understand a relatively simple agreement, had received a copy of the agreement far in advance of signing it, had consulted with attorneys, and had received consideration for the release, the fact that he was under stress when he signed the release did not create a genuine issue of material fact. *O'Hare,* 898 F.2d at 1017.

In *Anselmo,* an employee entered into an employment contract which he believed was for a term of three years and was subsequently fired before the end of that term. When he was notified of his termination, Anselmo was asked to sign a letter of resignation which included a release of his legal claims in consideration for which he received four months severance pay. When the employee attempted to invalidate a release on grounds of duress, the Eighth Circuit upheld the district court's grant of summary judgment, stating:

"[T]hese facts, viewed most favorably to Anselmo nevertheless fail to establish that he entered into the termination agreement bereft of his free will. Although he surely confronted a difficult dilemma—accepting the termination perks or pursuing his legal rights under the employment agreement—the fact

that the choice was difficult does not mean that he lacked the requisite free will to make the decision."

771 F.2d at 420.

In a case recently decided in this circuit, *Fay v. Petersen Publishing Co.*, 53 Empl. Prac.Dec. (CCH) ¶ 39,992, 1990 WL 67397 (S.D.N.Y. May 17, 1990), plaintiff had signed an employment termination agreement which included a paragraph waiving "known or unknown claims or demands of any kind or nature" in return for severance benefits above what he was entitled to by law and under his employment contract. The court determined that plaintiff had executed a valid release of his ADEA claims according to the *Bormann* criteria and dismissed the case pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted.

This case too involves a plaintiff who has negotiated a contract and now wants the benefit of his bargain without the consideration he extended to get that benefit. On October 21, 1987, Chase made Joseph an offer of enhanced retirement benefits and an opportunity to retire early with those added benefits in consideration for a waiver of claims and voluntary withdrawal from a position that Chase believed was no longer necessary. Joseph counter offered for the same package but with no claim waiver. Chase rejected the counter offer, and Joseph subsequently accepted the original offer. Joseph was not threatened by this offer; he was given a choice. He could stay on at his job at the status quo and pursue his claims in court or retire early with enhanced benefits. This was a difficult choice, but the cases establish that difficult choices do not constitute duress.

Rule 56(e) of the Federal Rules of Civil Procedure requires that, when a summary judgment motion is made and supported by evidence, the non-moving party may not rest upon the mere allegations of his pleadings to defeat the motion but must present specific facts showing that there is a genuine issue for trial. *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986).

Defendant has presented excerpts of plaintiff's deposition which show that the *Bormann* criteria have been met. For plaintiff to defeat the motion he must present evidence sufficient to make out a valid claim of duress. Plaintiff has not presented such facts.

Construing the available evidence in the manner most favorable to the non-moving party, as a court must in deciding a motion for summary judgment, plaintiff has not put forth sufficient evidence to provide a basis for a finder of fact to conclude that Chase subjected him to wrongful compulsion or duress. Plaintiff is therefore bound by the terms of the VRP and has waived his right to litigate the claims set forth in this action.

For the reasons set forth above, defendant's motion for summary judgment is granted.

The Clerk is directed to enter judgment dismissing the complaint and to mail a copy of the within to all parties.

SO ORDERED.