# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1823

_____

Elijah Clark, III,       *
     *
     Appellant,      *
     *     Appeal from the United States
     v.      *     District Court for the
     *     Eastern District of Missouri.
Riverview Fire Protection District,      *
     *
     Appellee.      *

_____

Submitted: November 20, 2003

Filed:   January 5, 2004

_____

Before BYE, RICHARD S. ARNOLD, and SMITH, Circuit Judges.

_____

BYE, Circuit Judge.

Elijah Clark appeals the district court's[1] grant of summary judgment in favor of Riverview Fire Protection District.  The district court concluded Clark waived his right to bring a Title VII action.  We affirm.

---

[1]The Honorable Frederick R. Buckles, United States Magistrate Judge for the Eastern District of Missouri, who heard this case pursuant to the consent of the parties under 28 U.S.C. § 636(c).

# I

Elijah Clark was employed as a firefighter by the Riverview Fire Protection District (Fire Protection District), which provides fire protection for several St. Louis area cities. On July 20, 2000, he was terminated for sleeping through a fire call, and arguably for other violations.

Clark appealed the Fire Protection District Board of Directors' (the Board) decision to terminate him. Jeffrey Hartnett, counsel for International Association of Fire Fighters Local 2665 (the Union), appeared with Clark for his appeal before the Board. Clark avers the Board upheld his termination. Thereafter, Dennis Murray, President of the Union, engaged in continuing discussions with the Board concerning Clark's termination, and arranged for Clark and himself, along with Jim Cook (Vice President of the Union) to appear again before the Board.

On August 16, 2000, five days prior to the scheduled meeting with the Board, Frank Vatterott, counsel for the Fire Protection District, transmitted to Murray a facsimile of a proposed "Agreement of Suspension" (the Agreement), the terms of which included, *inter alia*, a proposal Clark's termination be converted to a one-year, unpaid, disciplinary suspension and final warning, with his employment status to be restored with the Fire Protection District on July 20, 2001. In exchange, the Agreement proposed Clark would release the Fire Protection District from and waive all claims relating to his employment with the Fire Protection District, including claims of employment discrimination.

Prior to meeting with the Board, Clark met with Murray and Cook to review the proposed Agreement. During this meeting, Murray stressed to Clark he was terminated from employment and their goal was to reduce his discipline from termination to suspension. Murray advised Clark if he did not accept the proposed suspension he would remain terminated but could pursue litigation in court.

Immediately following this meeting, Clark appeared before the Board with Murray and Cook. Clark was not afforded the opportunity to speak to the Board despite his request to do so. The Board emphasized if he did not accept the proposed suspension, he would remain terminated from his employment with the Fire Protection District. The Board also required Clark to make a decision prior to its adjournment that evening.

The meeting briefly recessed, at which time Clark met privately with Murray and Cook to discuss the proposed Agreement. Murray expressed his concern if Clark were to push for a lesser period of suspension, the Board would likely reject the proposed suspension altogether thereby sustaining Clark's termination. At this point Clark told his union representative he would accept the Agreement. Clark then executed the Agreement.

Regarding signing the Agreement, Clark testified[2] he remembers "being pressured into signing it, being forced to sign this piece of paper." He testified Pat Wallace, one of the Board members, pointed his finger at Clark as he told Clark to sign the Agreement. Clark testified Wallace's eyes were "real big and blown up" and he was "just being rude." Clark further testified Regina Walsh, another Board member, had her hands on her hips and engaged in extensive hand waving and body language as she told him to sign the Agreement. Clark avers he was "literally being assaulted by the offensive gestures of the Board members who were pointing fingers at him and waving at him in order to get him to sign." Appellant's Brief at 16. He further testified he "begged them, pleaded for time so [he] could prepare . . . and really read into it . . . [he] didn't understand what was going on, it just happened so fast. And they told [him], you know, sign it today or you're terminated. So [he] was pressured into signing [the Agreement]."

---

[2]This testimony appears in the transcript of Clark's deposition, included at Appendix pages 160-87.

By signing the Agreement, Clark's termination was converted to an unpaid disciplinary suspension and final warning, with the suspension retroactive from July 20, 2000, to July 19, 2001. According to the Agreement, it would be Clark's responsibility to report, before June 1, 2001, to the Fire Protection District's Fire Chief if he intended to return to work. Clark did not report to work.

The Agreement released

> the District and its directors, officers, attorneys, together with their predecessors, successors, and assigns, from any and all claims made, to be made in the future, or which might have been made as a consequence of his employment by the District, including, but not limited to . . . actions under Title 29 and 42 of the United States Code.

App. at 78-79.

In addition, the Agreement provides

> 8. Firefighter understands and agrees that he is forever waiving his ability to claim that up to the date of this Agreement: a) the District (and/or its agents and/or employees) unfairly or unlawfully treated him; b) the District (and/or its agents and/or employees) discriminated against him due to age, race, color, sex, retaliation, religion, national origin, injury, disability and/or handicap . . .

Id. at 79.

Subsequent to signing the Agreement, Clark brought a race discrimination action arguing he signed the Agreement under duress. The district court granted the Fire Protection District summary judgment, concluding Clark had waived his right to bring the discrimination action.

## II

We review a grant of summary judgment de novo, applying the same standard as the district court. Jaurequi v. Carter Mfg. Co., 173 F.3d 1076, 1085 (8th Cir. 1999). Summary judgment is proper if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When ruling on a summary judgment motion, a court must view the evidence "in the light most favorable to the nonmoving party." Dush v. Appleton Elec. Co., 124 F.3d 957, 962-63 (8th Cir. 1997). However, a "nonmovant must present more than a scintilla of evidence and must advance specific facts to create a genuine issue of material fact for trial." F.D.I.C. v. Bell, 106 F.3d 258, 263 (8th Cir. 1997).

Clark points to no genuine issues of material fact in dispute. Thus, the question whether Clark signed the Agreement under duress is an issue of law. See Anselmo v. Mfrs. Life Ins. Co., 771 F.2d 417, 419-20 (8th Cir. 1985) (stating whether particular facts are sufficient to constitute duress is a matter of law) (citing Jamestown Farmers Elevator, Inc. v. General Mills, 552 F.2d 1285, 1290 (8th Cir. 1977)). Under Missouri law,[3] the central question with respect to duress is whether, considering all surrounding circumstances, one party to the transaction was prevented from exercising his free will by the threats or wrongful conduct of the other. Andes v. Albano, 853 S.W.2d 936, 942 (Mo. 1993) (en banc); Slone v. Purina Mills, Inc., 927 S.W.2d 358, 370-71 (Mo. Ct. App. 1996). "[T]he victim must have been so acted upon by the threats . . . as to deprive the victim of the mental state essential to the making of a contract." Landmark N. County Bank & Trust Co. v. Nat'l Cable Training Ctrs., Inc., 738 S.W.2d 886, 891 (Mo. Ct. App. 1987).

---

[3]Clark does not challenge the district court's application of Missouri state law to the duress issue.

Because Clark points to no facts indicating he was prevented from exercising his free will by threats or wrongful conduct, we conclude he was not under duress when he signed the Agreement. Likely this was a stressful situation for Clark, and under pressure he made a decision he later regretted. Clark's dissatisfaction, however, stems from a lack of favorable bargaining position and knowing the future of his employment was in the hands of a Board which was less than hospitable toward him. The "fact that the choice was difficult does not mean that he lacked the requisite free will to make the decision." Anselmo, 771 F.2d at 420.

The Fire Protection District provided Clark a copy of the Agreement five days before the meeting; Clark reviewed the Agreement prior to meeting with the Board; and the Board provided Clark a recess during the meeting to further review and consider his options. Considering these circumstances, we agree with the district court that the Board's desire to resolve the dispute before its evening adjournment did not preclude Clark from exercising his free will at the time he executed the Agreement. Also, any failure of Clark's representative to discuss the agreement and its implications does not equate to the Board's imposition of duress on Clark.

For these reasons, we affirm the district court's grant of summary judgment in favor of the Fire Protection District.

_____