EQUAL EMPLOYMENT OPPOR-
TUNITY COMMISSION and
Jean Black, Plaintiffs,

and

Carolyn Penny Lewis and Joyce Gitch,
Plaintiffs–Intervenors,

v.

AMERICAN HOME PRODUCTS COR-
PORATION d/b/a Fort Dodge Ani-
mal Health, Defendant.

No. C 00–3079–MWB.

United States District Court,
N.D. Iowa,
Central Division.

June 13, 2001.

Jean P. Kamp, Regional Attorney, EEOC Milwaukee District Office, Miwaukee, WI, for plaintiffs.

Neven J. Mulholland, Johnson, Erb, Bice, Kramer, Good & Mulholland, P.C., Fort Dodge, IA, Mark S. Dichter, Morgan, Lewis & Bockius, L.L.P., Philadelphia, PA, for defendant.

**MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFF EEOC'S MOTION FOR CONTINUANCE PURSUANT TO RULE 56(f) AND DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

BENNETT, Chief Judge.

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................... 1086

II. LEGAL ANALYSIS ................................................. 1087
    A. The Rule 56(f) Motion ......................................... 1088
        1. Requirements for a Rule 56(f) motion ...................... 1088
        2. The EEOC's submissions .................................. 1089
        3. Adequacy of the EEOC's submissions ...................... 1091
            a. Validity of releases ................................... 1091

    b. *Adequacy of the EEOC's submissions in light of pertinent*
       *factors* ................................................................ 1097
        i. *Evidence going to the validity of Gitch's release* ............. 1098
        ii. *Evidence going to the validity of Wood's release* ............. 1101
  B. *Partial Summary Judgment* ....................................... 1102

III. CONCLUSION ................................................................. 1102

What must a party do to obtain a continuance to pursue additional discovery before a court rules on a pending motion for summary judgment, and has the Equal Employment Opportunity Commission (EEOC) done it in this case? Those are the questions presented following the court's "conversion" of the defendant's motion for partial dismissal pursuant to Rule 12(b)(6) into a motion for partial summary judgment pursuant to Rule 56 and the EEOC's reassertion of a motion for a continuance pursuant to Rule 56(f). The court determined that the EEOC's first motion for a Rule 56(f) continuance, filed before the court's formal "conversion" of the defendant's dispositive motion into a motion for partial summary judgment, failed to meet the requirements of Rule 56(f) and applicable case law. Under the circumstances, however, the court also concluded that the EEOC should be given the opportunity to reassert its Rule 56(f) motion in light of the formal "conversion" of the underlying dispositive motion. That reasserted motion for a continuance to pursue discovery is now before the court, but the defendant contests its adequacy. The defendant asserts, instead, that the time is ripe for a ruling on its "converted" motion for partial summary judgment.

## I. INTRODUCTION

The procedural background of this case up to the "conversion" of the dispositive motion filed by defendant American Home Products Corporation, doing business as Fort Dodge Animal Health (AHP), is recounted in some detail in the court's ruling formally "converting" AHP's motion for partial dismissal into a motion for partial summary judgment. *See EEOC v. American Home Prods. Corp.*, 199 F.R.D. 620 (N.D.Iowa 2001) (*American Home Products I*). However, a few points require reiteration and a few additional steps in the process leading to consideration of the present Rule 56(f) motion must be outlined.

This is an action, filed September 29, 2000, by the EEOC pursuant to Title VII of the Civil Rights Act of 1964, as amended, seeking "to correct" unlawful sexual harassment and retaliation by defendant AHP and "to make whole" five individuals who have allegedly suffered from such unlawful employment practices. The EEOC asserts sexual harassment claims on behalf of Patty L. Parker, Amy Kolacia, and Carolyn Penny Lewis, and retaliation claims on behalf of Parker, Craig Wood, and Joyce Gitch. Lewis and Gitch have intervened in the action to assert their own claims, pursuant to Title VII and Iowa common law, against AHP. By order dated April 13, 2001, a similar action filed on June 8, 2000, by individual plaintiff Jean Black against AHP was consolidated with this action, with all subsequent filings to be filed in this case.

Before consolidation of the cases, on December 6, 2000, AHP moved to dismiss the EEOC's complaint as to claims for relief for Craig Wood and Joyce Gitch, on the ground that these two individuals have released AHP from all of their individual claims for relief, in return for severance packages, so that the EEOC cannot now recover on their claims on their behalf. AHP contends further that an Iowa state court has upheld the validity of Wood's

release, so that the question of the validity of his release cannot be relitigated here. The EEOC and the intervening plaintiffs separately resisted the motion to dismiss. Incorporated into the EEOC's resistance was an assertion that the dispositive motion should be converted into a motion for summary judgment and, further, that discovery should be permitted pursuant to Rule 56(f) before the court ruled on AHP's dispositive motion as a motion for partial summary judgment.

By order dated April 4, 2001, the court formally "converted" AHP's dispositive motion, but the court found that the EEOC's first Rule 56(f) motion failed to satisfy the pertinent requirements for a continuance to pursue discovery. *See American Home Prods. I,* 199 F.R.D. at 632–33. Nevertheless, the court also concluded that, because there was no "strict compliance" with the notice requirement for conversion of AHP's dispositive motion, not only was it appropriate for the parties to be given "a reasonable opportunity"—after adequate notice—"to present all material made pertinent to [the converted] motion by Rule 56," *see* FED.R.CIV.P. 12(b), but that such an opportunity should include giving the EEOC an opportunity to reassert its motion for a continuance pursuant to Rule 56(f). *American Home Prods. I,* 199 F.R.D. at 632–33. Therefore, the court gave the EEOC until April 18, 2001, within which to reassert a motion for a continuance to pursue discovery, in full compliance with Rule 56(f) and applicable authorities. That reasserted Rule 56(f) motion was filed as required on April 18, 2001. AHP resisted the reasserted motion on May 4, 2001, and the EEOC did not file

a reply. Therefore, this matter is now fully submitted.

Prior to filing its reasserted Rule 56(f) motion, the EEOC filed on April 11, 2001, a First Amended Complaint pursuant to a stipulation between the parties. None of the parties asserts that the First Amended Complaint has any effect upon AHP's dispositive motion or the adequacy or inadequacy of the EEOC's Rule 56(f) motion. Therefore, the court need not address the First Amended Complaint further at this time. Similarly, on May 18, 2001, Craig Wood filed a motion to intervene as an individual plaintiff in this action. AHP resisted that motion on June 6, 2001. However, Wood's motion to intervene is not before the court at this time, but has instead been assigned to a magistrate judge. Nevertheless, the court recognizes that its disposition of the EEOC's Rule 56(f) motion may have some impact on Wood's motion to intervene.

## II. LEGAL ANALYSIS

The first question before the court is whether or not the court should grant the EEOC's motion for a continuance, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, to allow the EEOC to pursue discovery before responding to AHP's motion for partial dismissal, now "converted" to a motion for partial summary judgment. If the Rule 56(f) motion is granted, the next question is, how much discovery should be allowed? If the Rule 56(f) motion is denied, the next question is, instead, should partial summary judgment in favor of AHP be entered at this time as to the EEOC's claims for relief on behalf of Craig Wood and Joyce Gitch? [1]

---

**1.** If the court reaches the second alternative question, and concludes that the EEOC is barred from asserting claims on behalf of Wood, it is likely that Wood's motion to intervene in this action to assert his own claims should also be denied as to some or all of the claims he seeks to assert.

## A. The Rule 56(f) Motion

### 1. Requirements for a Rule 56(f) motion

In *American Home Products I*, this court explained the purpose and requirements of a Rule 56(f) motion, as follows: Rule 56(f) provides as follows:

> (f) When Affidavits are Unavailable. Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

FED.R.CIV.P. 56(f). The Eighth Circuit Court of Appeals recently explained that

> "Rule 56(f) permits a party opposing summary judgment to seek a continuance and postpone a summary judgment decision until adequate discovery has been completed." [*Dulany v. Carnahan,* 132 F.3d 1234, 1238 (8th Cir.1997).] When seeking a continuance, however, the party opposing summary judgment is required to file an affidavit with the district court showing what specific facts further discovery might uncover. *See id.; Humphreys v. Roche Biomed. Lab., Inc.,* 990 F.2d 1078, 1081 (8th Cir. 1993).

*Roark v. City of Hazen, Ark.,* 189 F.3d 758, 762 (8th Cir.1999); *Stanback v. Best Diversified Prods., Inc.,* 180 F.3d 903, 911 (8th Cir.1999) ("Federal Rule of Civil Procedure 56(f) . . . requires the filing of an affidavit with the trial court showing 'what specific facts further discovery might unveil.'") (quoting *Dulany,* 132 F.3d at 1238). Thus, the opposing party must "demonstrate how discovery will provide rebuttal to the movant's claims."

*Alexander v. Pathfinder, Inc.,* 189 F.3d 735, 744 (8th Cir.1999).

The party seeking a Rule 56(f) continuance must do more than simply assert that it may discover additional facts, and must do more even than speculate about what those facts might be. Rather, as this court explained in *Dethmers Mfg. Co. v. Automatic Equip. Mfg. Co.,* 70 F.Supp.2d 944 (N.D.Iowa 1999), " '[i]n moving for relief under Rule 56(f), a party must demonstrate specifically "how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." ' " *Dethmers Mfg. Co.,* 70 F.Supp.2d at 981 (quoting *Simmons Oil Corp. v. Tesoro Petroleum Corp.,* 86 F.3d 1138, 1144 (Fed.Cir.1996), in turn quoting *Willmar Poultry Co. v. Morton–Norwich Prods., Inc.,* 520 F.2d 289, 297 (8th Cir.1975), *cert. denied,* 424 U.S. 915, 96 S.Ct. 1116, 47 L.Ed.2d 320 (1976)). To that end,

> [t]he party "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." *Securities & Exchange Comm'n v. Spence & Green Chem. Co.,* 612 F.2d 896, 901 (5th Cir.1980), *cert. denied,* 449 U.S. 1082, 101 S.Ct. 866, 66 L.Ed.2d 806 (1981). The rule does not require clairvoyance on the part of the moving party, *Enplanar, Inc. v. Marsh,* 11 F.3d 1284, 1292 (5th Cir.), *cert. denied,* 513 U.S. 926, 115 S.Ct. 312, 130 L.Ed.2d 275 (1994), but the movant is "required to state with some precision the materials he hope[s] to obtain with further discovery, and exactly how he expect[s] those materials would help him in opposing summary judgment." *Krim v. BancTexas Group, Inc.,* 989 F.2d 1435, 1443 (5th Cir.1993). It is not enough simply to assert, a la [the

non-movant in the case], that "something will turn up."

*Simmons Oil Corp.,* 86 F.3d at 1144; *see also Dethmers Mfg. Co.,* 70 F.Supp.2d at 981 (quoting *Simmons Oil Corp.*)..

The reason for such requirements is that "it is well settled that 'Rule 56(f) does not condone a fishing expedition' where a plaintiff merely hopes to uncover some possible evidence of [unlawful conduct]." *Duffy v. Wolle,* 123 F.3d 1026, 1041 (8th Cir.1997), *cert. denied,* 523 U.S. 1137, 118 S.Ct. 1839, 140 L.Ed.2d 1090 (1998). This is so, because " 'Rule 56(f) is not a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is meritorious.'" *Id.* (quoting *United States v. Light,* 766 F.2d 394, 397 (8th Cir.1985) *(per curiam )).* Therefore, " '[a] party invoking its protections must do so in good faith by affirmatively demonstrating why he cannot respond to a movant's affidavits as otherwise required by Rule 56(e) and how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.'" *Id.* (again quoting *Light* ). Furthermore, the court does not abuse its discretion to deny discovery before ruling on a motion for summary judgment if the facts the party seeking a continuance believes it can obtain would not prevent the entry of summary judgment. *See id.; Allen v. Bridgestone/Firestone, Inc.,* 81 F.3d 793, 797–98 (8th Cir.1996).

Where a party fails to carry its burden under Rule 56(f), "postponement of a ruling on a motion for summary judgment is unjustified." *Humphreys v. Roche Biomed. Labs., Inc.,* 990 F.2d 1078, 1081 (8th Cir.1993); *see also Stanback,* 180 F.3d at 912 (quoting *Humphreys* ).

*American Home Products I,* 199 F.R.D. at 631–32. Neither party asserts that any different or additional standards are applicable to the EEOC's reasserted Rule 56(f) motion. Therefore, the court turns to a survey of the EEOC's submissions in support of its reasserted motion for a continuance and determination of whether these submissions satisfy the requirements for a continuance pursuant to Rule 56(f).

#### 2. The EEOC's submissions

In support of its renewed Rule 56(f) motion, the EEOC submits, first, the Declaration of Jean P. Kamp, one of the attorneys representing the EEOC in this case. *See* EEOC's Motion For Rule 56(f) Continuance, Exhibit 1 (Kamp's Declaration). Ms. Kamp declares that no formal discovery has been conducted in this case and that she "believes that the evidence will show that the releases signed by Joyce Gitch and Craig Wood are insufficient to bar their personal claims for relief because they were not knowing and voluntary, and because they were imposed by American Home Products as part of a scheme to cover up the sexual harassment of female employees by Dave Hanlon, and to retaliate against employees, such as Gitch and Wood, who opposed such sexual harassment." Kamp's Declaration at ¶ 3. Specifically, Ms. Kamp declares that she plans to conduct discovery "with respect to the validity of the releases and the necessity for strong injunctive relief against possible ongoing retaliation." *Id.* Specifically, Ms. Kamp declares as follows:

A. As set forth in Gitch's Affidavit, attached to the Motion as Exhibit 2, Gitch's signature on the release was not knowing and voluntary because she was advised by Anne Anderson, an attorney employed by American Home Products, but purporting to act on Gitch's behalf, that she should not contact her own attorney, and that the time provided in

the release for consideration was not, in fact, available.

B. I plan to conduct discovery of Anne Anderson, Chet Schubert, Kathleen Sack and others with knowledge of the circumstances set forth in Gitch's Declaration to confirm and expand upon Gitch's recollection.

C. I plan to take discovery on the nature of the retaliatory pattern of which the Gitch and Wood releases were a part. I expect that documentary discovery and depositions of Anderson, Schubert, and management officials of American Home Products and Fort Dodge Animal Health will demonstrate that the company has used the circumstances of Wood's and Gitch's terminations and releases to intimidate other employees such as Patty Parker, Jean Black and Michelle Edmonds who opposed ongoing sex harassment by Dave Hanlon.

D. I expect to take the depositions of Black and Edmonds to learn how they were impacted by the circumstances of Wood's and Gitch's termination and severance.

E. I expect to obtain evidence that American Home Products breached the Agreement contained in Wood's release to provide stock options, in retaliation for his opposing sex harassment, and in order to further its purpose of covering up the sex harassment by intimidating persons who might complain.

F. I plan to take the depositions of ten women who were potential beneficiaries of settlement negotiations between EEOC and American Home Products as to the reasons they were unwilling to discuss the lawsuit or the charge of discrimination, and whether they were intimidated by officials of Fort Dodge Animal Health or American Home Products Corporation or by the circumstances of the terminations of Wood and Gitch. See Declaration of Margaret Klesczewski, attached as Exhibit 3. I anticipate that those depositions, and follow up discovery, may demonstrate an ongoing pattern of retaliation, of which the releases were a deliberate part.

Kamp's Declaration, ¶ 3(A)–(F). In addition to Kamp's Declaration, the EEOC submitted in support of its Rule 56(f) motion the Declarations by Joyce Gitch and Margaret Klesczewski referred to in Kamp's Declaration. Klesczewski's Declaration is the statement of a paralegal employed by the EEOC and describes her attempts to contact other women who may have been victims of sexual harassment by Dave Hanlon.

AHP contends that the EEOC's submissions are insufficient to obtain a continuance for discovery pursuant to Rule 56(f), primarily because, even if the EEOC obtains the evidence it contends that discovery will reveal, that evidence would not generate a genuine issue of material fact that Gitch's and Wood's releases were not knowing and voluntary AHP contends that the only evidence identified in Kamp's Declaration that is remotely relevant to the issues on which AHP seeks partial summary judgment, the validity of Gitch's and Wood's releases, is Gitch's Declaration and, possibly, evidence from Anne Anderson. However, AHP contends that Gitch's Declaration, and any other evidence the EEOC might be able to obtain from Gitch to resist partial summary judgment, is available to the EEOC without discovery, as evidenced by Gitch's Declaration itself. AHP contends that, while other evidence identified in Kamp's Declaration may go to the merits of relief in this case, it does not go to the merits of AHP's motion for partial summary judgment. Moreover, AHP contends that nothing in Gitch's Declaration or the expected testimony from Anne Anderson could generate a genuine issue of material fact as to whether or not Gitch's release was knowing and voluntary under governing law. Finally, AHP contends that the EEOC's

submissions are silent on any evidence of any kind that would generate a genuine issue of material fact that Wood's release was not valid, even assuming that consideration of that issue in these proceedings is not precluded by prior litigation in state court.

### 3. Adequacy of the EEOC's submissions

As explained above, to establish that a continuance is appropriate, the EEOC's submissions "must demonstrate specifically how postponement of a ruling on [AHP's] motion [for partial summary judgment] will enable [the EEOC], by discovery or other means, to rebut [AHP's] showing of the absence of a genuine issue of fact." *American Home Prods. I,* 199 F.R.D. at 631 (internal quotation marks and citations omitted). AHP's motion to dismiss the EEOC's complaint as to claims for relief for Craig Wood and Joyce Gitch, now converted to a motion for partial summary judgment, asserts that these two individuals released AHP from all of their individual claims for relief, in return for severance packages, so that the EEOC cannot now recover on their claims on their behalf, and asserts further that an Iowa state court has upheld the validity of Wood's release, over his contention that it was not "knowing and voluntary" and his contention that AHP subsequently breached the agreement, so that the question of the validity of his release cannot be relitigated here. Thus, the EEOC must demonstrate that discovery will allow the EEOC to rebut AHP's contention that there is no genuine issue of material fact that the releases signed by Craig Wood and Joyce Gitch are valid, and that claims on Wood's behalf evade the preclusive effect of the Iowa state court's determination that his release was valid and has not been breached.

### a. Validity of releases

"Like any contract, the scope of a release is determined by the parties' intent when they sign it [and][p]ublic policy favors the enforcement of voluntary settlement agreements containing release language that is unambiguous." *Joe v. First Bank Sys.,* Inc., 202 F.3d 1067, 1070 (8th Cir.2000). Because a release is a contract, the Eighth Circuit Court of Appeals applies "ordinary contract principles" to the question of the validity of a release. *See, e.g., Ulvin v. Northwestern Nat'l Life Ins. Co.,* 943 F.2d 862, 866–67 (8th Cir. 1991) (where the Older Workers Benefit Protection Act was not applicable to the plaintiff's waiver of his age discrimination claim, the district court properly applied "ordinary contract principles" to the question of the validity of a release, citing *Lancaster v. Buerkle Buick Honda Co.,* 809 F.2d 539 (8th Cir.), *cert. denied,* 482 U.S. 928, 107 S.Ct. 3212, 96 L.Ed.2d 699 (1987), and the district court properly concluded further that " 'when signing the termination agreement [the plaintiff] was not bereft of the quality of mind essential to the making of a contract,' " quoting the lower court, which in turn quoted *Anselmo v. Manufacturers Life Ins. Co.,* 771 F.2d 417, 420 (8th Cir.1985)), *cert. denied,* 502 U.S. 1073, 112 S.Ct. 970, 117 L.Ed.2d 135 (1992); *Leavitt v. Northwestern Bell Tel. Co.,* 921 F.2d 160, 162 (8th Cir.1990) (courts "apply general principles of contract construction" to the question of the validity of a release) (also citing *Lancaster,* 809 F.2d at 541); *see also Huber v. Hovey,* 501 N.W.2d 53, 55 (Iowa 1993) (a release is a contract and its enforcement is therefore governed by principles of contract law); *Fees v. Mutual Fire & Auto. Ins. Co.,* 490 N.W.2d 55, 58 (Iowa 1992) ("Settlement agreements are basically contracts, and in reviewing them, we turn to the general principles of contract interpretation.").[2]

---

**2.** Questions of the validity of contracts are ordinarily questions of state law. For exam-

Thus, under "ordinary principles of contract law," the validity of a release depends upon whether it was "voluntary and knowing." *See id.* at 867; *Leavitt,* 921 F.2d at 162 (a release of a claim is valid "if the claim is knowingly and voluntarily released"); *Fees,* 490 N.W.2d at 58 ("The law favors settlement of controversies and, accordingly, 'we have long held that voluntary settlements of legal disputes should be encouraged, with the terms of settlement not inordinately scrutinized.'") (quoting *Wright v. Scott,* 410 N.W.2d 247, 249 (Iowa 1987)).[3]

From a review of relevant case law, it is clear that the Eighth Circuit Court of Appeals has considered whether releases were "knowing and voluntary" by examining the circumstances under which the releases were granted. Moreover, these decisions show that the Eighth Circuit Court of Appeals has consistently considered several factors in making the determination of whether a release was "knowing and voluntary." The court will survey those decisions now to develop a summary of the pertinent factors.

ple, in *Barker v. Golf USA, Inc.,* 154 F.3d 788 (8th Cir.1998), *cert. denied,* 525 U.S. 1068, 119 S.Ct. 796, 142 L.Ed.2d 659 (1999), in determining the validity of an agreement to arbitrate, the Eighth Circuit Court of Appeals observed,

> To decide whether the parties' agreement to arbitrate is valid, we look to state contract law. *See Perry v. Thomas,* 482 U.S. 483, 493–94 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) ("[S]tate law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally."). We may apply state law to arbitration agreements only to the extent that it applies to contracts in general. *See Allied–Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 281, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995).

*Barker,* 154 F.3d at 791. Therefore, the court has included parallel citations to Iowa law

For example, in *Ulvin v. Northwestern National Life Insurance Company,* 943 F.2d 862 (8th Cir.1991), the Eighth Circuit Court of Appeals rejected the plaintiff's contention that he had generated a genuine issue of material fact as to whether his release of age discrimination claims was "voluntary and knowing," for the following reasons:

> Carlson was a vice president in Washington Square Capital's Real Estate Department when he signed the termination agreement. The district court observed that Carlson had access to the agreement for a considerable amount of time, that he chose not to consult an attorney, and that he was able to negotiate the addition of favorable terms to the agreement. Slip op. at 10. The court also stated that the agreement was written in clear, simple language, that it granted Carlson severance benefits in excess of those required by contract or statute, and that Carlson decided to sign the agreement of his own free will. *Id.*

Appellants point to no specific facts about which there is a material dispute, and we reject their general argument.

regarding the validity of releases, where appropriate.

**3.** As the Iowa Supreme Court has also noted, "A party who has executed a release or settlement based on fraud has several potential remedies," including suing on the original cause of action and challenging the validity of the release when the release is raised as a defense, bringing an equity action to set aside or reform the contract, or affirming the agreement and bringing a action to recover damages for fraud. *See Phipps v. Winneshiek County,* 593 N.W.2d 143, 146 n. 2 (Iowa 1999); *see also Huber,* 501 N.W.2d at 55 (a release is a contract, and "[a]bsent fraud or mistake, ignorance of a written contract's contents will not negate its effect"). However, the court cannot read anything in the EEOC's submissions in this case as suggesting that either Gitch's or Wood's release was obtained through fraud.

Accordingly, we affirm the district court's order dismissing Clinton Carlson from Ulvin's class action.

*Ulvin,* 943 F.2d at 867; *see also Huber,* 501 N.W.2d at 56 (considering whether the release was "ambiguous" and whether the party who signed the release was "knowledgeable and informed about the risks" for which the party was releasing another from liability); *Fees,* 490 N.W.2d at 58 (beginning its consideration of the validity of a "policy release and release of all claims" by considering whether the release was "clear and unequivocal").

Similarly, the court in *Leavitt v. Northwestern Bell Telephone Company,* 921 F.2d 160 (8th Cir.1990), determined that release of a beneficiary's ERISA claim against a fiduciary required consideration of "ordinary contract principles," albeit supplemented by principles of trust law. *See Leavitt,* 921 F.2d at 162. The court upheld the district court's decision, on a motion for summary judgment, to enforce the release for the following reasons:

Leavitt was an experienced management employee presented with an understandable contract that unambiguously released Bell of all liability relating to Leavitt's claim that Bell wrongfully denied him plan benefits. Bell informed Leavitt of the general contents of the settlement offer eleven days before he signed it, giving him time to take precautions and consult with others. Leavitt read the release and understood its terms before he signed it. There was no disparity of knowledge—Leavitt was familiar with his rights under the plan and he knew of the relevant facts underlying his ERISA claim when he signed the release. The release advised Leavitt of his right to consult an attorney, but Leavitt chose to sign the release without obtaining legal advice. In consideration for Leavitt's release, Bell paid him $15,000 to settle a disputed claim.

Although Bell presented Leavitt with a difficult decision—retire, accept the $15,000 settlement, and sign the release; retire, decline settlement, and pursue his legal rights under the plan; or not retire—Leavitt remained free to decide which alternative he preferred. There was no overreaching, exploitation, or other misconduct on Bell's part. Because Leavitt knowingly, voluntarily, and fairly settled his dispute with Bell, Leavitt's release effectively extinguished the claims asserted in this suit.

*Leavitt,* 921 F.2d at 162–63.

In *Lancaster v. Buerkle Buick Honda Company,* 809 F.2d 539 (8th Cir.), *cert. denied,* 482 U.S. 928, 107 S.Ct. 3212, 96 L.Ed.2d 699 (1987), the decision on which the Eighth Circuit Court of Appeals in part relied in both *Ulvin* and *Leavitt,* the court considered, *inter alia,* the plaintiff's contention that he did not knowingly and voluntarily release his age discrimination claim under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–34. *See Lancaster,* 809 F.2d at 541. The court, however, rejected that argument:

In determining whether the release was knowingly and voluntarily given, "we apply ordinary contract principles." *Runyan [v. National Cash Register Corp.],* 787 F.2d [1039,] 1044 n. 10 [(6th Cir.) (*en banc*), *cert. denied,* 479 U.S. 850, 107 S.Ct. 178, 93 L.Ed.2d 114 (1986) ]. The undisputed facts do not support Lancaster's argument.

Lancaster was first presented with the termination agreement on December 30, 1983, but did not sign it until January 4, 1984. In the interim he chose not to consult an attorney. Lancaster admits he read the agreement and considered its terms before signing. The agreement covers less than two typewritten pages, is written in clear and simple language, and unambiguous-

ly releases all of his claims relating to termination of his employment. The agreement contains no ultimatums or deadlines for its acceptance. Lancaster admittedly had input into the terms of the agreement and in fact negotiated significant favorable additions to it. Lancaster was a well-paid management employee who has experience in business and who has signed numerous contracts in his lifetime.

Even viewing these facts with the benefit of all reasonable inferences in the light most favorable to Lancaster, there is no genuine issue of material fact with regard to the basic facts underlying the making of the termination agreement. Lancaster made no showing Buerkle Buick was guilty of exploitation or overreaching in these circumstances. Thus, we conclude the district court correctly determined the parties knowingly and voluntarily entered into the termination agreement and that Lancaster released all of his employment-related claims.

Accordingly, the district court's entry of summary judgment in favor of Buerkle Buick is affirmed.

*Lancaster*, 809 F.2d at 541.

Most recently, in *Joe v. First Bank System, Inc.*, 202 F.3d 1067 (8th Cir.2000), the Eighth Circuit Court of Appeals concluded, almost in passing, that the plaintiff, who was attempting to set aside a release of WARN Act claims [4] he had signed in consideration for additional severance pay during a mass layoff, had "presented no meaningful proof of duress," which the

court found was "not surprising since [the plaintiff] had the release for two or three days and discussed it with his attorney." *Joe*, 202 F.3d at 1070. In *Anselmo v. Manufacturers Life Ins. Co.*, 771 F.2d 417 (8th Cir.1985), a less recent, though more detailed, discussion of whether a release of claims obtained in return for severance benefits had been obtained by "duress," the Eighth Circuit Court of Appeals observed, "A party trying to invalidate a release must show that the other party's wrongful acts caused him to be 'bereft of the quality of mind essential to the making of a contract.'" *Anselmo*, 771 F.2d at 420 (quoting *Wolf v. St. Louis Pub. Serv. Co.*, 357 S.W.2d 950, 955 (Mo.Ct.App.1962)). However, the court concluded that the plaintiff had not made the necessary showing:

According to Anselmo's version of what happened in the hotel room on the evening of June 28, 1982, he was forced to sign the release because of the pressure created by Manu–Life's agent. The agent told him he must sign the letter. If he refused, he would not receive severance pay and he would be denied references for future employment. Anselmo then contacted a lawyer, but he received no legal advice. He signed the release and delivered it to Manu–Life's agent the next day.

These facts, viewed most favorably to Anselmo nevertheless fail to establish that he entered into the termination agreement bereft of his free will. Although he surely confronted a difficult

---

**4.** That is, claims pursuant to the Worker Adjustment and Retraining Notification Act (WARN Act), 29 U.S.C. §§ 2101–2109. *See Joe*, 202 F.3d at 1069. The WARN Act provides that, in the case of large-scale layoffs by employers subject to the Act, the employer must provide notice to each of the affected employees, including several categories of information, such as the likely date when the

mass layoff will occur and the expected date when the individual employee will be separated. *See id.* at 1071 (citing 29 U.S.C. § 2102(a) and 20 C.F.R. § 639.7(d)). In addition, "[a]n employer who violates the WARN Act is liable for 'back pay for each day of violation.'" *Id.* at 1072 (quoting 29 U.S.C. § 2104(a)(1)(A)).

dilemma—accepting the termination perks or pursuing his legal rights under the employment agreement—the fact that the choice was difficult does not mean that he lacked the requisite free will to make the decision.

Indeed, the contrary seems to be true. Anselmo, an experienced businessman, took ample time and precautions before signing the release. He took the agreement home and consulted both his wife and an attorney before signing it.

We conclude that Anselmo's release was freely given and was not the product of duress. The language of the release is clear and unequivocal and released Manu–Life of all potential liability arising out of the compensation contract.

*Anselmo,* 771 F.2d at 420.

AHP likens this case to *Pilon v. University of Minnesota,* 710 F.2d 466 (8th Cir. 1983), in which the Eighth Circuit Court of Appeals held that no inquiry into the "knowingness" or "voluntariness" of a release of Title VII claims was required, where the wording of the release left no doubt that all claims potentially held by the releasing party were waived, the releasing party was advised by counsel concerning the agreement, and the releasing party had negotiated the terms of the release. *See Pilon,* 710 F.2d at 467–68. In these circumstances, the Eighth Circuit Court of Appeals found that a decision of the Fifth Circuit Court of Appeals, which had held that "mere signature on a waiver form was 'insufficient to establish a knowing, voluntary relinquishment of Title VII rights,'" was distinguishable, and questioned whether that court would have ruled as it did if it had been confronted with the facts before the Eighth Circuit Court of Appeals. *Id.* (quoting *Cox v. Allied Chem. Corp.,* 538 F.2d 1094 (5th Cir.1976), *cert. denied,* 434 U.S. 1051, 98 S.Ct. 903, 54 L.Ed.2d 804 (1978)). Al-

though AHP is correct that, in *Pilon,* the Eighth Circuit Court of Appeals "decline[d] to adopt the rule asserted by Pilon that even where a waiver of Title VII rights is unambiguous, a court must inquire into the voluntariness of the employee's consent," the court also noted that, "[i]f fraud or duress were claimed, Pilon would of course be entitled to show by evidence that she had not voluntarily signed the release, however clear and unambiguous the language." *Id.* at 468 (concluding that the plaintiff's claim was "at most ... that her lawyer improperly advised her as to the legal effect of the words of the release," not that she signed the release as the result of fraud or duress). The EEOC contends that it will be able to discover evidence of duress, affecting the "knowingness" and "voluntariness" of Gitch's release, thus distinguishing this case from the circumstances under which the court in *Pilon* refused to look beyond the plaintiff's signature on an unambiguous release.

■ From the court's review of these cases, it is clear that the summary of pertinent factors provided by the Eighth Circuit Court of Appeals in *Leavitt* is fully applicable here, notwithstanding that the court's consideration of "ordinary contract principles" in *Leavitt* was supplemented by principles of trust law. *See Leavitt,* 921 F.2d at 162. Those factors are the following:

(1) [the plaintiff's] education and business experience; (2) [the plaintiff's] input in negotiating the terms of the settlement; (3) the clarity of the release language; (4) the amount of time [the plaintiff] had for deliberation before signing the release; (5) whether [the plaintiff] read the release and considered its terms before signing it; (6) whether [the plaintiff] knew of his rights under the plan and the relevant facts

when he signed the release; (7) whether [the plaintiff] was given an opportunity to consult with an attorney before signing the release; (8) whether [the plaintiff] received adequate consideration for the release; and (9) whether [the plaintiff's] release was induced by improper conduct on [the fiduciary's] part.

*Leavitt,* 921 F.2d at 162 (citing G. BOGERT & G. BOGERT, THE LAW OF TRUSTS AND TRUSTEES § 943, at 475–80 (rev.2d 3d.1982); *Lancaster,* 809 F.2d at 541 (an ADEA case); and *Cirillo v. Arco Chem. Co.,* 862 F.2d 448, 451 (3d Cir.1988) (an ADEA case), and specifically considering each of these factors). *Accord Joe,* 202 F.3d at (1070) (considering the time the plaintiff had to consider the release and whether or not he consulted an attorney, "*Leavitt* factors" (4) and (7)); *Ulvin,* 943 F.2d at 867 (considering the plaintiff's business experience, time to consider the release, opportunity to consult an attorney, ability to negotiate terms of the release, clarity of the language of the release, whether the agreement granted severance benefits in excess of what the plaintiff was otherwise entitled to receive, and the lack of any facts showing the release was not signed of the plaintiff's own free will, *i.e.,* "*Leavitt* factors" (1), (2), (3), (4), (7), (8), and (9)); *Lancaster,* 809 F.2d at 541 (considering the amount of time the plaintiff had to consider the release, whether or not he had the opportunity to consult an attorney, whether he read and considered the terms of the agreement, the clarity of the agreement, whether there were any "ultimatums or deadlines" for acceptance, whether the plaintiff negotiated the terms of the agreement, and the plaintiff's business experience, *i .e.,* "*Leavitt* factors" (1), (2), (3), (4), (5), (7), and (9)); *Anselmo,* 771 F.2d at 420 (considering the fact that a representative of the defendant told the plaintiff he must sign the release, but balancing that "pressure" against whether the plaintiff contacted an attorney, considered the release and

chose to accept it knowing the circumstances (even if the choice was difficult), the plaintiff's business experience, whether he had time to consider the release, and the clarity of the release, *i.e.,* "*Leavitt* factors" (1), (3), (4), (5), (7), and (9)); *Pilon,* 710 F.2d at 467–68 (considering the clarity of the release, whether the plaintiff consulted an attorney, whether the plaintiff negotiated the terms of the release, and the absence of any evidence of fraud or duress, *i.e.,* "*Leavitt* factors" (2), (3), (7), and (9)).

Turning briefly to a decision of an Iowa state court, in *Fees v. Mutual Fire & Auto. Ins. Co.,* 490 N.W.2d 55 (Iowa 1992), the Iowa Supreme Court considered a particular facet of the question of whether a release was "knowing and voluntary," that is, whether the plaintiff had shown sufficient "economic duress" to invalidate the release. *See Fees,* 490 N.W.2d at 58–60. The court began with a recitation of the principles of "economic duress":

A contract is voidable by the victim "if the party's manifestation of assent is induced by an improper threat by the other party that leaves the victim no reasonable alternative." Restatement (Second) of Contracts § 175(1), at 475 (1981). Based upon this standard, we have recognized a release or settlement agreement may be invalid by reason of economic duress. *Turner v. Low Rent Hous. Agency,* 387 N.W.2d 596 (Iowa 1986). Economic duress can serve as a basis for invalidating a release when the releasor involuntarily accepted the terms of the release, the circumstances allowed only that alternative, and such circumstances were the results of the coercive acts of the releasee. *Id.* at 598–99. The releasor must establish that the duress resulted from the releasee's wrongful oppressive conduct and not by the releasor's necessities. *Id.*

*Fees,* 490 N.W.2d at 58. Moreover, the court explained the elements and necessary proof to establish "economic duress":

Under the Restatement standard, courts have identified the elements of economic duress to include: (1) one party involuntarily accepted the terms of another, (2) circumstances permitted no other alternative, and (3) such circumstances were the result of coercive acts of the other party. *Turner,* 387 N.W.2d at 598–99.

To satisfy the first element of economic duress, the record must show that Fees had involuntarily executed the release. Kenneth Fees had an associate art degree in sociology and three additional years college education in human relations. He was trained and employed as a health and life insurance salesman at the time of the fire. It is clear Fees understood their rights at the time of executing the release. The terms of the release were not ambiguous. They understood the release was a full and final settlement of the claims. Prior to and during the settlement negotiations, Fees talked with their attorney who acted on their behalf. Substantial consideration was paid to Fees. The final settlement amount was nearly the amount proposed by Fees. They had ample time to consider and to discuss with their attorney Mutual Fire's offer of settlement before accepting it. Under these circumstances, the plaintiffs have failed to generate a fact issue upon the first element of economic duress as a matter of law.

To satisfy the second element of economic duress, plaintiffs must show they had no reasonable alternative under the circumstances. The defendants urge the plaintiffs could have maintained a lawsuit to resolve their claim. The second element of economic duress is a practical one under which we take in the exigencies of the victim, and the mere availability of a legal remedy is not control-

ling if it will not afford effective relief to one in the victim's circumstances. Restatement § 175, comment b, at 476. We find there is a genuine issue as to the facts upon this element.

To satisfy the third element, the record must show the plaintiffs' financial troubles were the result of the defendants' wrongful or coercive acts. Fees were experiencing financial difficulties before the fire destroyed their home. They urge their economic problems were the results of the defendants' wrongful and coercive acts. They claim the defendants wrongfully accused them of committing arson and perjury in their bankruptcy proceeding. Even though these acts are in the record, there is no showing that the acts caused or contributed to the plaintiffs' economic troubles.

*Fees,* 490 N.W.2d at 59–60. Thus, as to the first element of a claim of "economic duress," the Iowa Supreme Court considered what this court has described as "*Leavitt* factors" (1), (2), (3), (4), (5), (6), and (7), and as to the third element of the claim, the court considered "*Leavitt* factor" (9). *See Leavitt,* 921 F.2d at 162. Because the plaintiffs in *Fees* failed to generate a genuine issue of material fact on two of the three elements of "economic duress," the Iowa Supreme Court concluded that the district court had correctly held that the release was valid and constituted a complete defense to the plaintiffs' claims. *Fees,* 490 N.W.2d at 60.

### b. *Adequacy of the EEOC's submissions in light of pertinent factors*

■ Considering the EEOC's submissions in light of the pertinent factors, it is apparent, initially, that much of the evidence that the EEOC contends discovery will reveal has nothing to do with the issues raised by AHP's dispositive motion, which concern only the validity of Wood's

and Gitch's releases. *See American Home Prods. I,* 199 F.R.D. at 631 (to establish that a continuance is appropriate, the EEOC's submissions "must demonstrate specifically how postponement of a ruling on [AHP's] motion [for partial summary judgment] will enable [the EEOC], by discovery or other means, to rebut [AHP's] showing of the absence of a genuine issue of fact") (internal quotation marks and citations omitted). Specifically, the evidence identified in paragraph 3(C) of Kamp's Declaration, which relates to whether or not Gitch's and Wood's releases were part of "the retaliatory pattern" of which the EEOC accuses AHP, sheds no light on whether Gitch and Wood voluntarily and knowingly signed their releases, *see* Kamp's Declaration, ¶ 3(C), because it does not encompass any of the *"Leavitt* factors," and the EEOC does not suggest that this "pattern of retaliation" had an impact on Gitch and Wood, where their releases were allegedly the *beginnings* of that "pattern." *See, e.g., Leavitt,* 921 F.2d at 162 (considering, as factor (9), whether the release was induced by improper conduct of the defendant). The court acknowledges that evidence of such a "pattern," based on the alleged treatment of Wood and Gitch, may be pertinent to whether *others* were induced not to complain about discriminatory conduct or to seek severance pay, but that evidence goes to the merits of the EEOC's general claim, or claim for relief on behalf of others, not to the question of the validity of the releases signed by Wood and Gitch. *See* Kamp's Declaration, ¶ 3(C), (D) & (F). Thus, the evidence in categories (C), (D), and (F) is irrelevant to whether there are genuine issues of material fact precluding partial summary judgment in favor of AHP on the grounds asserted in AHP's motion. Therefore, only the evidence identified in ¶ 3(A), (B), and (E) are of any relevance to AHP's dispositive motion.

■■■ *i. Evidence going to the validity of Gitch's release.* The EEOC contends that it already has the evidence from Gitch's Declaration, as summarized in ¶ 3(A) of Kamp's Declaration. That evidence is that "Gitch's signature on the release was not knowing and voluntary because she was advised by Anne Anderson, an attorney employed by American Home Products, but purporting to act on Gitch's behalf, that she should not contact her own attorney, and that the time provided in the release for consideration was not, in fact, available." Kamp's Declaration, ¶ 3(A). The EEOC also contends that a continuance will allow it to "conduct discovery of Anne Anderson, Chet Schubert, Kathleen Sack and others with knowledge of the circumstances set forth in Gitch's Declaration to confirm and expand upon Gitch's recollection." *Id.* at ¶ 3(B). Neither the evidence the EEOC already has from Gitch's Declaration nor the evidence pertaining to Gitch's recollections, which the EEOC seeks a continuance to obtain, is sufficient to generate a genuine issue of material fact on the issues raised in AHP's dispositive motion.

Gitch's Declaration reveals that she was an educated and experienced Human Resources Manager, and had served in that capacity for AHP for approximately fourteen months. *See* Gitch Declaration, ¶ 1; *see Leavitt,* 921 F.2d at 162 (factor (1) is the plaintiff's "education and business experience"). Although the EEOC contends that Gitch involuntarily signed the release of her claims against AHP, Gitch's Declaration reveals that she actually initiated negotiations for a severance package, first by telling Anne Anderson, apparently in January of 1999, that she "would be willing to leave in return for severance pay of one year's salary," *see id.* at ¶ 4(B), to which AHP responded with a suggestion on or about February 1, 1999, that the company would offer six months' severance pay. *See id.* at ¶ 4(C). AHP eventually made a

written counteroffer shortly before February 17, 1999, which included three months' severance pay. *See id.* at ¶ 4(E). Gitch initially rejected the package including only three months' severance pay, *id.* at ¶ 4(E), then ultimately accepted it. *Id.* at ¶ 4(H); *see Leavitt*, 921 F.2d at 162 (factor (2) is the plaintiff's "input in negotiating the terms of the settlement"). Gitch does not contend that three months' severance pay was legally inadequate consideration for the release, and three months' severance pay is more than Gitch was legally entitled to receive in the absence of the severance agreement and release. *See Leavitt*, 921 F.2d at 162 (factor (8) is "whether [the plaintiff] received adequate consideration for the release").

Although Gitch contends that her "employment status was unclear," *see id.* at ¶ 4(G), nowhere does she contend that the terms of the release were not clear, that she did not read or understand them, or that she did not know what rights she would be releasing. *See Leavitt*, 921 F.2d at 162 (factor (3) is "the clarity of the release language," factor (5) is "whether [the plaintiff] read the release and considered its terms before signing it," and factor (6) is "whether [the plaintiff] knew of [her] rights under [the law] and the relevant facts when [she] signed the release"). Gitch's Declaration may suggest that she felt pressured to accept the smaller amount of severance pay, or face the possibility that she would get none, *see* Gitch Declaration at ¶ 4(H), but her Declaration reveals that she had more than two weeks to consider a severance package, from the time she first requested such a package sometime in January of 1999, and the date she signed a severance agreement and release, *see id.* at ¶ 4(B); at least two weeks between the February 1, 1999, meeting at which AHP first suggested a willingness to offer six months' severance pay, *see id.* at ¶ 4(C), and February 17, 1999, when Gitch signed an agreement; and at least "a few days" to consider the package actually offered by AHP, which included only three months' severance pay. *See id.* at ¶ 4(E). Moreover, as the Eighth Circuit Court of Appeals recognized in *Anselmo*, Gitch's dilemma is no different from that present in every such case: The employee offered severance pay in return for a release of claims must make the choice of "accepting the termination perks or pursuing [her] legal rights under the employment agreement [and] the fact that the choice was difficult does not mean that [she] lacked the requisite free will to make the decision." *Anselmo*, 771 F.2d at 420.

Although the EEOC suggests Gitch was told by Anderson "that the time provided in the release for consideration was not, in fact, available," *see* Kamp's Declaration at ¶ 3(A); *see also Leavitt*, 921 F.2d at 162 (factor (4) is "the amount of time [the plaintiff] had for deliberation before signing the release"), such an allegation concerning the circumstances is absent from Gitch's Declaration. *See, e.g.*, Gitch's Declaration at ¶ 4(F) (identifying the statements made to Gitch by Anderson after Gitch received the final version of the release a few days prior to signing the release).[5] Also contrary to the EEOC's

---

**5.** In their entirety, Gitch avers that the statements made by Anderson at this time were the following:

> She told me that she was not able to get me any additional severance, and that I should take it. She told me that I should not contact a lawyer, because if I did so, she would be unable to continue to help me or to speak with me. She also told me again that Fort Dodge Animal Health had evil people; that they had many lawyers on the 17th floor, and that they could keep me in court for years. She also told me that if I became involved in litigation with American Home Products, it would follow me and could injure my career.

Gitch Declaration at ¶ 4(F).

characterization, Anne Anderson did not tell Gitch not to consult an attorney about the release, *see* Kamp's Declaration at ¶ 3(A), but that "if [Gitch] did so, [Anderson] would be unable to continue to help [Gitch] or to speak with [Gitch]." Gitch's Declaration at ¶ 4(F). Anderson's comment does no more than recognize Anderson's ethical obligation to refrain from communicating with or advising a potentially adverse party she knows to be represented by counsel. *See, e.g.,* IOWA CODE OF PROFESSIONAL RESPONSIBILITY FOR LAWYERS, Disciplinary Rule (DR) 7–104.[6] Thus, Gitch was not prevented from consulting an attorney for guidance about the terms or effect of the release. *See Leavitt,* 921 F.2d at 162 (factor (7) is "whether [the plaintiff] was given an opportunity to consult with an attorney before signing the release").

Nor does Gitch's Declaration generate a genuine issue of material fact that her release "was induced by improper conduct on [AHP's] part," *see id.* (factor (9)). The circumstances here reveal no more pressure from AHP than the Eighth Circuit Court of Appeals found inadequate to generate a genuine issue of material fact as to the validity of a release in *Anselmo,* in which the plaintiff was told that "he must sign" the release, and faced the "difficult dilemma [of] accepting the termination perks or pursuing his legal rights under the employment agreement." *See Anselmo,* 771 F.2d at 420. Nor did AHP create a situation of "economic duress" from its conduct, *see Fees,* 490 N.W.2d at 59–60,

because AHP had indicated to Gitch that she was free to seek other employment and Gitch had, in fact, secured other employment before she signed the release agreement with AHP. *See* Gitch Declaration at ¶ 4(G). While the court agrees that AHP's conduct may have been heavy-handed and the court sympathizes with Gitch's distress in the circumstances, there is nothing in Gitch's Declaration that is sufficient to generate a genuine issue of material fact that her agreement to release her claims against AHP was not "knowing and voluntary."

Because Gitch's own Declaration fails to generate a genuine issue of material fact on any pertinent factor, "discovery of Anne Anderson, Chet Schubert, Kathleen Sack and others with knowledge of the circumstances set forth in Gitch's Declaration to confirm and expand upon Gitch's recollections," *see* Kamp's Declaration at ¶ 3(B) (additional facts that will be revealed by discovery if a continuance is granted), also will not "demonstrate specifically how postponement of a ruling on [AHP's] motion [for partial summary judgment] will enable [the EEOC], by discovery or other means, to rebut [AHP's] showing of the absence of a genuine issue of fact." *See American Home Prods. I,* 199 F.R.D. at 631 (internal quotation marks and citations omitted). Evidence that "expands" upon Gitch's recollections is simply too vague or speculative to generate the necessary genuine issues of material fact, *American Home Products I,* 199 F.R.D. at 631–32 (the party opposing summary judgment

---

**6.** This disciplinary rule provides as follows:

(A) During the course of representing a client a lawyer shall not:

(1) Communicate or cause another to communicate on the subject of the representation with a party known to be represented by a lawyer in that matter except with the prior consent of the lawyer representing such other party or as authorized by law.

(2) Give advice to a person who is not represented by a lawyer, other than the advice to secure counsel, if the interests of such person are or have a reasonable possibility of being in conflict with the interests of the client.

IOWA CODE OF PROFESSIONAL RESPONSIBILITY FOR LAWYERS, DR 7–104.

must demonstrate that a continuance is required on the basis of a showing of specific facts further discovery might uncover, and may not simply speculate about what those facts might be), not least because to do so, such evidence would have to be, to a significant extent, *contrary to* Gitch's own recollections, in view of consideration of Gitch's Declaration against the pertinent *"Leavitt* factors." Thus, the EEOC has not satisfied the requirements for a continuance to obtain further discovery concerning the validity of Gitch's release.

***ii. Evidence going to the validity of Wood's release.*** AHP also contends that the EEOC has not indicated any evidence that discovery will reveal that would demonstrate the invalidity of Wood's release. The court notes, first, that the EEOC's submissions in support of its Rule 56(f) motion are nearly silent with regard to Wood's release, and, second, what little is said about his release either cannot generate the necessary genuine issues of material fact, or pertains to issues precluded by a decision against Wood in Iowa state court.

The only evidence pertaining to Wood identified in Kamp's Declaration as likely to be discovered if a continuance is granted is "evidence that American Home Products breached the Agreement contained in Wood's release to provide stock options, in retaliation for his opposing sex harassment, and in order to further its purpose of covering up the sex harassment by intimidating persons who might complain." Kamp's Declaration at ¶ 3(E). Again, whether or not Wood's release was "to further [AHP's] purpose of covering up the sex harassment by intimidating persons who might complain" does nothing to generate a genuine issue of material fact that Wood's own release was not voluntary or knowing.

Moreover, even if evidence that AHP subsequently breached Wood's severance agreement by failing to provide stock options could be obtained would generate a genuine issue of material fact as to the validity of Wood's release, the EEOC has not overcome AHP's contention that the issue is precluded. In other words, the EEOC has not shown anywhere in its Rule 56(f) submissions that the issue of whether or not AHP breached the severance agreement with Wood was not fully litigated in state court with a result against Wood. As the Eighth Circuit Court of Appeals recently explained,

[Under Iowa law,] [i]ssue preclusion prevents a party to a prior ·action from relitigating issues that were raised and resolved in the previous action. *See, e.g., Hunter v. City of Des Moines,* 300 N.W.2d 121, 123 (Iowa 1981). State legislative acts and judicial decisions "have the same full·faith and credit in every court within the United States … as they have by law or usage in the courts of such State … from which they are taken." 28 U.S.C. § 1738 (1994); *accord Haberer v. Woodbury County,* 188 F.3d 957, 961 (8th Cir.1999). Iowa law requires that four conditions be met before an Iowa court may apply the doctrine of issue preclusion: " '(1) the issue determined in the prior action is identical to the present issue; (2) the issue was raised and litigated in the prior action; (3) the issue was material and relevant to the disposition in the prior action; and (4) the determination made of the issue in the prior action was necessary and essential to that resulting judgment.' " *Dettmann v. Kruckenberg,* 613 N.W.2d 238, 244 (Iowa 2000) (quoting *American Family Mut. Ins. Co. v. Allied Mut. Ins. Co.,* 562 N.W.2d 159, 163–64 (Iowa 1997)); *accord North Star Steel Co. v. MidAmerican Energy Holdings Co.,* 184 F.3d 732, 737 (8th Cir. 1999)[, *cert. denied,* 528 U.S. 1046, 120 S.Ct. 580, 145 L.Ed.2d 482 (1999) ].

Failure of any of these four conditions prevents the application of issue preclusion.

*Milligan v. City of Red Oak, Iowa,* 230 F.3d 355, 360–61 (8th Cir.2000). The EEOC has not even attempted to point to possible discovery that would demonstrate that the issues of the validity of Wood's release and the prior determination that AHP's alleged breach concerning exercise of stock options was not a material breach invalidating the severance and release agreement were not "identical," "raised and litigated," "material and relevant to the disposition in the prior action," or not "determined" as issues "necessary and essential to that resulting [state court] judgment." *Id.* Thus, the EEOC's Rule 56(f) submissions are insufficient to "demonstrate specifically how postponement of a ruling on [AHP's] motion [for partial summary judgment] will enable [the EEOC], by discovery or other means, to rebut [AHP's] showing of the absence of a genuine issue of fact" with regard to the validity of Wood's release. *See American Home Prods. I,* 199 F.R.D. at 631 (internal quotation marks and citations omitted).

The court therefore concludes that the EEOC's Rule 56(f) motion is insufficient to require a continuance to obtain discovery with regard to the validity of the releases signed by Wood and Gitch.

### B.   Partial Summary Judgment

Because the court concludes that the EEOC's Rule 56(f) motion is insufficient, the second question before the court is, should partial summary judgment in favor of AHP be entered at this time as to the EEOC's claims for relief on behalf of Craig Wood and Joyce Gitch? That question can be answered more briefly, in light of the foregoing analysis.

The court concluded above that Gitch's Declaration is insufficient to generate a genuine issue of material fact that her release of claims against AHP was not knowing and voluntary. Therefore, the EEOC cannot properly assert claims on Gitch's behalf. Similarly, the court concluded above that the EEOC had not generated a genuine issue of material fact that Wood's release was not knowing or voluntary and has not attempted to generate a genuine issue of material fact that the issues of the validity of Wood's release and alleged subsequent breach of that agreement are not precluded by the prior decision against Wood in Iowa state court. Therefore, AHP is entitled to partial summary judgment as requested at this time.

### III.   CONCLUSION

The EEOC's April 18, 2001, reasserted motion for a continuance to pursue discovery pursuant to Rule 56(f) of the Federal Rules of Civil Procedure is **denied.** In light of the denial of the EEOC's motion, and, consequently, in the absence of any genuine issues of material fact precluding partial summary judgment, AHP's December 6, 2000, motion to dismiss the EEOC's complaint as to claims for relief for Craig Wood and Joyce Gitch, "converted" into a motion for partial summary judgment, by order dated April 4, 2001, is **granted** . The EEOC may not pursue claims for individual relief on behalf of Gitch or Wood in this action.

**IT IS SO ORDERED.**